(67 Misc. Rep. 334.)

## In re HOFFMAN'S WILL.

### (Surrogate's Court, Kings County. April, 1910.)

WILLS (§ 524*)—CONSTRUCTION—DESIGNATION OF PERSONS—"LEGATEES."

A will provided that upon the death of the life tenant the remainder should be divided pro rata among the legatees named in the will. If the word "legatees" was intended to indicate the five persons named as such in the will, the entire estate could not be disposed of, and, if testator had so intended, he could easily have called them by name. In another clause providing for abatement of legacies, a certain process of proportion was ordained necessarily applicable only to the beneficiaries who survived testator. *Held*, that "legatees" should be construed to mean only those who survived testator, and thus became legatees in the proper import of the term.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1117; Dec. Dig. § 524.*

For other definitions, see Words and Phrases, vol. 5, pp. 4084–4086.]

Proceedings for construction of the will of Charles Ferdinand Hoffman. Construction decreed.

See, also, 65 Misc. Rep. 126, 121 N. Y. Supp. 100.

Whitridge, Butler & Rice (Edwin T. Rice and Benjamin A. Morton, of counsel), for proponent Margaret Hoffman and for Carolyn Hoffman.

Miller, King, Lane & Trafford (Edwin T. Rice and Benjamin A. Morton, of counsel), for Union Trust Company.

Charles W. Dayton, Jr. (D. Cady Herrick, of counsel), for contestants Rosalie A. Avery, Inez Hoffman Spagnola and Joseph L. Bourdette.

J. Brownson Ker, special guardian for infants Grace Hoffman, Bertha Hoffman, and Myrtle Hoffman.

Clarence P. Avery, in pro. per.

KETCHAM, S. Reargument has been heard upon one feature of the construction of the will and codicil about to be admitted to probate. Material parts of these instruments are as follows:

"Article 1. I grant and bequeath unto my niece Margaret Hoffman seventy-five thousand dollars ($75,000).

"Art. 2. I grant and bequeath unto my niece Carolyn, or Carrie Hoffman, fifty thousand dollars ($50,000). Both the foregoing legacies shall be held in trust as herein provided in article 8. * * * The income shall be paid only to said legatees respectively. * * * The remainder of their respective legacies shall remain in trust as provided above, * * * and in case of the death of either of them without issue, before the death of their aunt Inez Hoffman legatee under article 4 herein, then the share of such decedent shall in such event revert to her said Inez Hoffman. And in case either said nieces should die without issue subsequently to the death of their aunt the said Inez Hoffman and prior to the death of their grandmother, Caroline Hoffman, then in such case their respective shares shall in like manner revert to their grandmother, Caroline Hoffman.

"Art. 3. I grant and bequeath my plantation commonly known as 'Caroline' Plantation situated in Iberia parish, state of Louisiana, with all appurtenances and belongings thereunto appertaining, unto John Frederick Hoffman.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Art. 4. I grant and bequeath unto * * * Inez Hoffman, the sum of one hundred and twenty-five thousand dollars ($125,000) with the proviso that the same shall be placed in trust as herein provided in article 8 and the income thereof be paid to herself only. * * * In case of her death without issue and prior to that of her mother, all her interest herein shall revert to her mother. * * *

"Art. 6. I make and appoint my mother Caroline Hoffman residing in the city of New Orleans, state of Louisiana, my residuary legatee, the amount to be placed in trust as herein provided in article 8 for her sole benefit. * * * At her death the principal and any accumulated income there may be, shall be divided pro rata between the legatees named in articles 1, 2 and 4 herein respectively upon the basis of their respective legacies herein and to be subject to the same trust restrictions stated herein appertaining to their several legacies hereunder.

"Art. 7. Should my estate be not found sufficient to realize at least two hundred thousand dollars ($200,000) to meet the legacy under article 6 herein, then all other legacies herein * * * shall be scaled and diminished in amount, or if necessary be wholly canceled, in order to make said legacy under article 6 herein, equal to two hundred thousand dollars ($200,000) or whatever lesser amount my total estate may then possibly be—such scaling to be upon a pro rata basis."

Paragraph 8 contains an appointment of a trustee, with language from which an express trust is to be implied, and an avowal of confident belief that the testator's "legatees hereunder * * * may receive wise counsel and advice on financial matters affecting their interests."

Paragraph 9 contains a gift of personal effects to "Caroline Hoffman, residuary legatee mentioned in article 6 herein."

The codicil substituted, in place of the gift in article 4 to Inez Hoffman, the sum of $25,000, and provided as follows:

"I hereby devise and bequeath unto my sister Widow Wilhelmina Bourdette residing on Peters avenue, Sixth district, city of New Orleans, La., the sum of $35,000 say thirty-five thousand dollars and to John F. Hoffman now residing on my Carolina Plantation, Iberia parish, state of Louisiana, the sum of $10,000, say ten thousand dollars. And I hereby make these two legatees, upon the death of my mother pro rata residuary legatees under the terms and conditions as set forth in article 6 herein, as additional residuary legatees.

"The above legacy to John F. Hoffman is in addition to the one in his favor under article 3 herein."

The estate involved is of the value of $2,300,000.

Caroline Hoffman, named in article 6 of the will, Wilhelmina Bourdette and John F. Hoffman, named in the codicil, all died before the testator's death. It was held in the former opinion (Matter of Hoffman, 65 Misc. Rep. 126, 121 N. Y. Supp. 100) that, by the death of Caroline Hoffman, the estates of those who would otherwise have taken in remainder upon her death were accelerated; that as to the will there were three trusts for the payment to the beneficiaries thereof, during their several lives, of the income upon $75,000, $50,000, and $25,000, respectively; that the several estates in remainder upon the death of Caroline Hoffman, which by her death were converted into present estates, were separated into as many individual trusts as there were beneficiaries; and that the fund of each of said trusts was designed to be a portion of the residue which should bear to the whole residue the same proportion as the "legacy" so-called of the benficiary

should bear to the aggregate of such primary legacies of money. As to the codicil, it was held that the two general legacies therein contained, of $35,000 and $10,000, lapsed and fell into the residue.

The question treated in the former opinion (65 Misc. Rep. 126, 121 N. Y. Supp. 100), with an inadequacy which has provoked this re-argument, is whether, under construction of the will and codicil, the interests in the residue which would have devolved upon these two codicillary legatees if they had survived the testator were intended, in the event of their death, to pass as a part of the residue to the trusts for the surviving beneficiaries, or to become assets, undisposed of, to be distributed according to the laws governing intestacy.

There is little in the situation of the estate, as it appeared to the testator, to aid a choice between these two interpretations. Under one, the portion of the estate involved would at once devolve upon the next of kin; under the other, it would be divided into as many parts as there might be surviving beneficiaries, each of which parts would reach the next of kin at the end of a designated life.

It will save words if the terminology of the testator be adopted, though at the sacrifice of legal accuracy. Hence the word "legatee" will be borrowed from the will to indicate the person named in the will or codicil as the intended recipient, either outright or in trust, of a specific sum of money primarily allotted to him; the word "legacy" will be used to denote the interest intended for such legatee in the sum of money specifically allotted to him or to his use, and the term "residuary legatee" will describe such person in his relation to the remainder.

It is argued in behalf of next of kin that the intended gifts to the "residuary legatees" are governable by the standards which would have applied if the testator, instead of indicating as the subject of his proposed gifts of the residue so much thereof as was proportionate to the legatee's primary legacy of money, had defined his intended benefit to each of them from the residue by a specific fraction, of which the amount of the so-called "legacy" was the numerator and the aggregate of all the "legacies" was the denominator. In this regard, it is contended that, where the whole of the "legacies" of specific sums was $195,000, and the attempted legacy in a given case was of $35,000, the will should be read as if the words were, "I give, of the residue, $35/195$."

Upon this reading the claim is founded that the portions of the residue which would have been held in trust for the two legatees named in the codicil, if they had outlived the testator, are not disposed of by the will and must fall into intestacy.

Against this, it is insisted: (1) That the attempted gifts in remainder were to a class of beneficiaries, so that, upon the deaths which occurred, the survivors still constituted the class; and (2) that the intent of the testator was not to measure the intended gifts from the residue by the amounts designated as the several legacies proposed, but that the will evinces a purpose to confer an interest in the residue which should be dependent upon not only the amount of the primary legacy, but upon the assumption by the intended beneficiary of the

character of an actual legatee as to such amount upon the death of the testator.

The argument last stated would impress upon the will the same meaning as if the testator had said:

"Having attempted legacies to five persons of certain sums of money, which legacies will fail if they die before me, I direct that each of them shall have such interest in the residue of my estate as shall be measurable by the amount which shall actually come to him. It is for them as legatees, and not as persons who may never fulfill that capacity, that my gift in remainder is intended."

Definitions of gifts to a class seem to exclude these gifts, and the controversy narrows to the two remaining claims of construction.

The rule under which, upon the predecease of a person for whom a will has designed an aliquot share, the share falls into intestacy, is highly artificial. While criticism of its basis, since it is well established, is not permissible, its foundations may without disloyalty be examined when it is sought to extend its application to a will which may substantially vary from the language found in the cases which the rule has been announced.

It has been applied where the attempted gift was to several persons of distinct fractional shares. Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Matter of Riches, 37 Misc. Rep. 464, 75 N. Y. Supp. 937; Langley v. Westchester Trust Co., 39 Misc. Rep. 735, 80 N. Y. Supp. 959; s. c., 180 N. Y. 326, 73 N. E. 44; Betts v. Betts, 4 Abb. N. C. 317.

In the case of Kimberly, cited supra, the sole question considered was whether three legatees took as a class, jointly or in common; and it was held that the three "took as tenants in common, and hence that, as to one-third of the testator's estate, he died intestate," though beyond peradventure one of the legatees died before the death of the testator and never took anything, in common or otherwise.

By the cases cited, the proposition is fastened in the law that a person who is simply designated in a will as an intended legatee and who never becomes a legatee may take an estate. But while the mind is thus forbidden to question how in any case the statute directing that "every estate devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy," can possibly be applicable to a person who took no devise, there is nothing in those cases to restrain inquiry whether a will materially different from the wills there construed comes within the grasp of those authorities.

How can a will effect a devise before the testator is dead? What tenancy, whether in common or in any other quality, is vested in a person just because he is named as a devisee or legatee in a will which may be revoked and which, even if confirmed, has no power to devolve any estate until the death of the testator? Why should those incidents of a tenancy in common, which forbid survivorship among those who actually take, be extended to persons who merely take a chance to become tenants in common under an attempted devise which becomes

effectual as to one but void as to the other? These are questions which are set at rest by the cases cited, with respect to the language of the wills there construed, and such form of words in other wills as may be found to be substantially similar; but the inquiry survives whether in the will at bar the provisions are practically within the constraint of the cases cited.

The rule under examination has always resulted in the diversion of a portion of the testator's estate to persons whom he has refrained from mentioning in his will as recipients thereof; and, in every case falling within its influence, the particular facts have led to a disregard of the canon of construction that intestacy is to be avoided, and that a testator is presumed to have intended a comprehensive disposition of all of his estate.

If the gifts in the will at bar are properly capable of the construction that they were dependent upon a crisis or method of determination which could only be developed and appreciated after the testator's death, it is certain that any portion of the estate which might have otherwise passed by one of the contingent gifts must, upon its failure, remain in the residue and be the subject of the residuary disposition. It would be as if the testator had said:

"At my mother's death, I desire that my executors shall ascertain who are then my primary legatees in actual enjoyment of their primary legacies and shall pay a share of the remainder to such as then maintain that attitude. As to such as do not then occupy that relation in fact, my proposed gift shall be as if it had never been attempted."

Under the words last imagined, or any of like import, there would not be intestacy. Where, upon the predecease of a proposed legatee, it has been held that the gift to him was distributive and upon its failure fell into intestacy, the several legacies were bestowed nominatim, and the will contained no phrase which would affix to the gifts a condition to be fulfilled upon the testator's death.

In the will under examination, the testator did not attempt to dispose of the remainder to his beneficiaries nominatim. To have named them would have been simple, direct, and usual. Gifts by name are sufficiently normal and familiar to justify the conclusion that a testator who has rejected the use of names to describe the objects of his gift has rejected the purpose which would ordinarily adhere to a gift in that form.

No case has been cited of a death among legatees before the testator's death in which persons indicated as beneficiaries have been held to take in common, or in which the will has been construed to contain an intention that such persons shall become tenants in common, unless the gift was by name or by a description which in its value at the time of the making of the will was equivalent to nomination. Gifts nominatim imply the purpose that the persons named shall take unquestionably upon the testator's death. To attach to the gift a description to which the proposed beneficiary must conform necessarily provokes the dilemma of construction, either that the testator conceived of the beneficiary as already clothed with the description and adopted it as an equivalent for a name, or that he looked forward to a time, after his

death, when the legatee should assume and answer to the description as a condition of receiving the proposed benefit.

If the qualification adopted by the testator as to the incidental gift was used to the exclusion of the names by which he might readily have indicated his beneficiaries, the resort to the qualification, and the rejection of the ordinary method of nomination force the question, did he mean thereby to avoid the result which nomination would have imposed upon his purpose? Any deviation from normal and accessible means, familiarly known to be appropriate to a definite end, may well indicate that the end was not sought, and that avoidance of the method premeditated an avoidance of the result to which it was adapted.

The distinction between words importing a gift by name and words of gift to one by description may be without substance when it concerns a primary and isolated legacy, for it makes no difference, either in the testamentary notion or in the administration of the estate, whether a single naked gift of money be made to one by name or description; but the distinction may be dominant and may well lead to diverse results when a testator, having nominated a person for a legacy of money, superimposes a new proposed benefit to be meted out to the legatee in proportion to his original legacy. Any language used in framing this secondary purpose may well demand an interpretation.

This testator's dispositions in remainder were not only not defined by the use of the names of his proposed donees, but they were hedged about with language significantly adapted to a purpose that his beneficiaries in remainder should be only those who should survive him and should present themselves in the capacity of legatees. His words were: "To the legatees named in articles 1, 2, and 4 herein, respectively, upon the basis of their respective legacies herein." To these were added the two legatees named in the codicil who were called "pro rata residuary legatees" and "additional residuary legatees" (meaning, of course, additional legatees in remainder).

Thus, there were five persons who primarily were indicated as legatees in specific sums. The proportion in which the remainder was to be disposed of was to conform to their so-called "legacies." In determining whether these words comprehended the persons who were indicated by the will as the recipients of his gift in remainder or such of them only as upon his death would fulfill that capacity, the words "legatee" and "legacy" must be given their normal influence. They have no meaning in grammatical limits or in legal application except that a legatee is one who gets a legacy, and a legacy is that which a legatee gets.

Nemo viventis hæres est. With a certainty no less than that involved in the maxim, "No one can be the legatee of one who is alive." He may be the proposed or expected legatee, just as one may be the heir apparent or presumptive; but death of the ancestor in one case and of the testator in the other must come to pass before heir or legatee can actively appear in the character to which he has been potentially appointed.

Hence, while it must be conceded that this testator—a layman drawing his own will—may conceivably have used the words "legatee" and "legacy" loosely to describe the persons merely proposed as possible recipients of a legacy, it is at least equally probable that the words were employed with intelligence and precision; and, in any event, where the search is not so much for the subjective intention of the testator as for the intention which his will expresses, it is safe to resolve the doubt in favor of a construction which is open to no reproach except that it gives words their precise significance. If the words in question, taken with their context, be regarded as susceptible of their normal grammatical meaning, there is clearly room, if not an imperative warrant, for resort to the presumption against intestacy and for the construction which such presumption suggests.

In determining whether or not the will contemplated that the process of proportion should be applied to the "legatees" and "legacies" as they stood at the testator's death, recourse may be had to article 7 of the will. There, in one important respect, appears the distinct purpose that, with regard to those "legatees" and those "legacies," a certain process of proportion was ordained which could not be applied to the legatees or their legacies as they might be at the time the will was made, but which was necessarily to be applied only after his death and to the beneficiaries who should then survive. In this article it is provided that, in case the estate shall not realize the sum of $200,000 for the trust in behalf of the mother, the legacies of the five beneficiaries shall be so scaled and diminished, upon a pro rata basis, as to make the legacy to the mother equal to $200,000.

It needs no argument to show that the scaling or proportionate diminution here provided for could only be meant to take place among those of the beneficiaries who might be alive when the pro rata diminution should become a practical necessity, and then to the total elimination of the so-called "legacies" for which no living legatee should appear.

Without undue jealousy for the rule which requires a construction that will avoid intestacy, and, indeed, without reliance on that rule, it may be confidently believed that, where two dispositions by proportion to the same legacies are provided for, the proportioning in each instance is intended to apply to the same persons at the same time and with the same procedure.

Gifts to persons not by name or class, but by character, have always been recognized; and to their efficacy it is essential that the capacity upon which the proposed gift is made dependent shall be attained by the beneficiary at the testator's death. Of these are legacies to "servants," which do not inure to the good of those who serve the testator when the will is drawn, but to those who appear in that character when he dies; gifts "to my pastor," "to my physician," "to my wife," "to my executors," "to my heirs," or "the heirs of a person other than the testator."

These are generally held to apply to those whom the event of the testator's death shall present in the capacity upon which the gift has

been made contingent; and, upon the failure of the gift, the sum or portion which was its intended subject lapses, or, strictly, remains in the estate and is not governed by the laws relative to intestacy.

In careful thought no proposed gift of the remainder attempted in this will can be said to lapse into the estate upon the predecease of the intended beneficiary. In such case the portion of the estate which might have passed by the attempted gift has never been detached from the estate and, therefore, cannot fall into it. The gifts fail, and become as if they had never been attempted, because the event upon which the efficiency of the attempt was wagered has not occurred. The words, "I give $1,000 to A., $2,000 to B., and $3,000 to C.," make no gifts, and can make none, unless the will becomes operative both as to the estate and the proposed donees. Hence they are said to lapse. When to these words are added, "I give to these legatees the residue in proportion to their legacies," the second devise is subordinate to and dependent upon the vesting of the primary legacies.

So, in the will under examination, the gifts in remainder, which were dependent upon the primary legacies of money, never took effect; and the subject thereof, which had never departed from the residue, remained in it when the principal gift failed, and the subordinate gift in remainder, which adhered to the principal gift, failed with it. Had the gifts in remainder been measured by words which clearly imported an intention that the sums of the primary legacies as they stood in the will, and not the sums which should be reduced to enjoyment, should be the standard of the proportion, it might be said that the amounts by which the testator's contingent bounty was to be ascertained were not the sums to which the "legatees" as such would become entitled at the testator's death. If such had been the language of the will, it would have afforded encouragement to an interpretation from which intestacy would result upon the predecease of one of the beneficiaries. In that case, unless the gift could be said to be still contingent upon the assumption by the beneficiaries of the capacity of legatees, there could be no escape from intestacy. But it is seen that the testator did not attempt to so measure his gifts in remainder.

Where he neither nominates the legatee nor metes out to him his proposed share upon the arbitrary basis of the amount stated in his primary legacy, he gives evidence of an intention which avoids intestacy; for he has rejected two forms of expression, either of which might alone have left a part of the estate undisposed of, and both of which together would certainly compel that result.

Upon the question reargued the will and codicil are painfully uncertain. Suppose that the rhetoric of these two papers lends itself equally to the two inconsistent interpretations sought to be imposed upon them, and that there is verbally nothing to choose between a reading which would find in them attempted gifts to five persons in defined fractional shares and the alternate reading which would make these gifts dependent upon the assumption by the proposed benefi-

ciaries of the character of legatees entitled in fact to a primary legacy. Then, if words are at a deadlock and interpretation hangs in balance, there is controlling weight in the principle that the construction must be preferred which would avoid intestacy.

This rule is based upon the conviction that the testator, in the act of making a will, does not intend to leave a portion of his estate undisposed of, unless express words be adopted to indicate that purpose. This testator thought that he was making a will. He intended, or he is presumed to have intended, that it should embrace his whole estate. Infused with this purpose, any words used by him must be accorded a meaning which tends against intestacy, if capable of such meaning.

Without resort to the presumption against intestacy, but more confidently by its help, the instruments in dispute are best reconciled to the interpretation that the testator's gifts in remainder were meant to inure to the benefit of those only who might maintain the quality of pecuniary legatee in fact at his death; that, as to the two codicillary legatees, the testamentary purpose was that their interest in remainder should be adherent to and contingent upon their actual acquisition of the character of legatees; that their secondary gifts were intended to fail with their primary gifts; and that the disposition in remainder to the three surviving beneficiaries embraces the entire residue.

The view in this respect suggested in the former opinion has been confirmed and should be embodied in the decree of probate.

Decreed accordingly.