FRANK B. ALLEN, executor, &c., of George D. Moore, deceased,

*v.*

HARRIET E. MOORE et al.

[Submitted May 1st, 1916. Decided June 27th, 1916.]

1. Where testator provided that the residue of his estate should be divided among the legatees in proportion to their moneyed legacies, and two of the legatees predeceased him, their shares lapsed into the residue and did not become intestate property.

2. A residuary clause presumably indicates the testator's intention to dispose of all his personal property.

3. A lapsed legacy goes to the residuary legatee or legatees.

On petition for construction of will. Heard on bill, petition, answers and stipulation of counsel as to facts.

*Mr. Benjamin J. Fleuchaus,* for the petitioner.

*Mr. John R. Hardin* (of *Pitney, Hardin & Skinner*), for the defendant Francis D. Stanwood.

*Mr. Alfred F. Stevens,* for the defendant estate of Mary S. Moore, deceased.

*Messrs. Lehlbach & Van Duyne,* for the defendant Adeline H. Walsh and Robert E. Walsh, individually, &c.

*Messrs. McCarter & English,* for the defendants Board of Home Missions of the Presbyterian Church in the United States of America, and Board of Foreign Missions of the Presbyterian Church in the United States of America.

*Messrs. Cortlandt & R. Wayne Parker,* for the defendant Presbyterian Board of Relief for Disabled Ministers and the Widows and Orphans of Deceased Ministers.

*Mr. Fred. G. Stickel, Jr.,* for the defendants George Moore Reuck, Hattie Reuck Schmidt and Bessie A. Stanaback.

*Mr. Charles B. Clancy,* for the defendant Protestant Foster Home Society.

*Mr. Frederick G. Burnham,* for the defendant Board of Church Erection.

FOSTER, V. C.

The petition in this case is filed by the executor of George D. G. Moore, who died October 13th, 1891, leaving a last will and testament dated June 17th, 1889, and two codicils thereto dated respectively January 24th, 1891, and October 5th, 1891, which were duly admitted to probate in Essex county. Testator left a widow but no issue.

The will, after directing the payment of debts and funeral expenses, gives a large number of general and specific legacies

to relatives and friends of the testator, among them a bequest of $10,000 is given by the fourth clause of the will to George DeGraw Moore, a nephew of the testator, and a bequest of $250 is given by the eleventh clause of the will to George Moore, a great nephew of the testator. George De Graw Moore and George Moore both died in April, 1891, about five months before the death of the testator.

By the twentieth clause of his will, testator gave all the rest and residue of his estate, including the interest and accumulations thereon and also $10,000 of which his sister was to have the income for life, to his executors in trust for the purpose of establishing a home for respectable aged people of both sexes, if in the judgment of his executors it was deemed advisable to do so, and if this home was not established within five years from the death of the testator, then he directed his executors "to divide and distribute the said residue pro rata among the legatees above named, and in proportion to their respective moneyed legacies."

By the twenty-second clause of the will he directs that for all the purposes of distribution the whole estate, real and personal, is to be taken and considered as personal property.

By the first codicil some minor changes are made regarding some of the bequests and he authorized his executors in carrying out the trust mentioned in the twentieth clause of the will to unite with some existing home or institution.

By the second codicil executed on October 5th, 1891, a few days before testator's marriage and death he directed:

"*First.* As to the residue of my estate given to my executors in trust by the twentieth clause of my will—in place of that—I give to my executors in trust the sum of fifty thousand dollars, the interest thereon to be paid to Mary S. Fitch (with whom I am shortly to be joined in marriage) during her life in semi-annual payments, the first to begin at six months after my death, and at her decease, said sum of fifty thousand dollars to go as provided in said twentieth clause subject to the same conditions as in said clause mentioned, and also the modifications of the same contained in the prior codicil dated January 24th, 1891, said bequest to be in lieu of dower in my estate. And in case said residue shall not amount to the sum of fifty thousand dollars then I direct that the other legacies (except that to my sister and that to the cemetery company) shall abate in proportion so that at all events the sum of fifty thousand dollars shall be available for said purpose."

The estate proving insufficient to pay all debts, legacies and expenses, and to create a trust fund of $50,000 for the benefit of the widow, proceedings were had in this cause whereby directions were given that the legacies should abate in proportion for the purpose of creating this fund. *Moore* v. *Moore, 50 N. J. Eq. 554.*

Mrs. Mary S. Moore, the widow of the testator, died July 11th, 1908.

The executor in the exercise of his judgment deemed it advisable not to establish the home for aged people.

On November 7th, 1913, the final account of the executor and trustee was duly allowed by the decree of the Essex county orphans court, and the executor now has in hand, after the payment of all debts, expenses and legaices, $21,972.68, to distribute according, as he assumes, to the provisions of the twentieth clause of the will pro rata among the moneyed legatees mentioned in the will.

By the stipulation of counsel three questions designated therein as "A," "B" and "C," were submitted for determination; and on the argument before me, by the consent of all parties, the following entry was made upon the record:

"The questions referred to in 'B' and 'C' in the stipulation were disposed of by V. C. Emery orally at the time of the argument before him last summer, and under his oral decision at that time counsel are all agreed that Mrs. Stanwood, under section 23, is entitled to $250 and Mrs. Sarah Walsh is entitled to like amount, and that the proprietors of the Rosedale Cemetery are not entitled to have any further payments made to them beyond what has already been paid, that both the Stanwood and Walsh legacies are money bequests under the will."

This leaves for determination the questions raised by the paragraph designated as "A" in the stipulation, and which reads as follows:

"(A) Is this sum of $10,250, which was bequeathed to George De Graw Moore, under subdivision 'fourth' of said will, and to George Moore under subdivision 'eleventh' of said will and the balance now in the hands of the executor, or any part of it to be considered to have lapsed into the rest and residue of the estate of the testator and if so what part and to whom should it be distributed or should the testator be considered to have died intestate so far as these two legacies are concerned, and if so to whom should the said sums be distributed?"

These questions arise because of the contention made by the representatives of Mrs. Mary S. Moore, the widow of the testator to the effect that these two legacies to testator's nephews, who predeceased him, amounting to $10,250 lapsed by reason of the death of the nephews in the lifetime of the testator; and that these lapsed legacies did not become part of the residuary estate because the nephews were both general and residuary legatees. That they became residuary legatees by reason of the fact that money had been bequeathed to them respectively under the fourth and eleventh clauses of the will, and that the second codicil and the twentieth clause of the will, directed the distribution of the residue among the moneyed legatees named in the will.

The insistment is made that as to these lapsed legacies testator died intestate, and that they are to be distributed under the statute, and that as this was the condition existing at the death of the testator, his widow then, or her representatives now, are entitled to one-half the amount of these lapsed legacies.

Support is sought for this contention in the rule stated in *Collins* v. *Bergen, 42 N. J. Eq. 57*, that "when an aggregate fund is given to several persons *nominatim,* to be divided among them in equal shares, if one of them dies before the testator the share of such decedent will lapse;" and at page 60 of this case the statement is made that "the shares of Harriet Kemble and Rachel Collins who died in testator's lifetime, lapsed and being shares of the residue they did not pass to the other legatees as part of the residue (*Hawk. Wills 42*), consequently the testator must be held to have died intestate as to them."

There is a clear distinction to be noted between the situation presented by the facts in this case, and that present in *Collins* v. *Bergen, supra,* and in the cases cited to support the text in *Schoul. Wills (3d ed.)* § *519,* in which this rule is discussed.

These are cases in which the testator either gave the residue of his estate to certain persons named, or definitely designated, to be divided among them in stated proportions; or cases in which the general legacies lapsed because of their illegality, and not because of the death of the legatee in the lifetime of the testator. In the first class of cases the devises or bequests were

held to have been made to individuals and not to a class, and that in the absence from the will of any provision for survivorship or substitution, such devisees or legatees took as tenants in common and not as joint tenants.

In *Security Trust Co.* v. *Lovett, 78 N. J. Eq. 451,* Vice-Chancellor Leaming states that the rule applicable to bequests of this kind is that "where a gift is to several persons by name, a presumption arises, in the absence of contrary intent apparent on the face of the will, that the persons named are to take in their individual, and not their collective capacity, even though the persons as named constitute a class. In such case the bequest lapses as to any one of the persons named who may be dead at the time of the death of the testator. * * * The presumption referred to, however, is but a rule of construction to be used in the ascertainment of the intention of testator; the presumption is not conclusive. If it sufficiently appears from the will that it was the intention of testator to make a bequest to a class, as distinguished from the individuals who may compose the class at the time the will was made, the death of one or more of the persons before testator will not cause a lapse of any part of the fund, but the survivors of the class will take the whole; such an intention may be manifest even when the persons comprising the class are named."

In other cases in which this rule has been followed, it has been limited in its operation to legacies that have lapsed by reason of their invalidity, and it has not been extended to cases where the legacy lapsed by reason of the death of the legatee before the testator, the reason for this limitation being that the will speaks at the death of the testator, when he may be supposed to know of the death of the legatee, and for that reason he is presumed to have intended to include the subject of the lapsed legacy in the residuary clause, but that the same reasoning is not sound in regard to legacies declared void, for in such cases, testator at his death has thought he had made an effectual disposition of the subject to one and cannot be presumed to intend to give it to another. *Lea* v. *Brown, 56 N. C. 141; Allison* v. *Allison, 56 N. C. 236.*

In this case the deceased nephews of the testator are not specifically named as residuary legatees, nor is any other person so named. By the second codicil, the fund of $50,000 which testator terms the residue of his estate, is to be distributed in accordance with the provisions of the twentieth clause of the will, and these provisions direct that the residue be divided and distributed pro rata among the legatees named in the will in proportion to their respective moneyed legacies.

To entitle the representative of Mrs. Moore to prevail under the rule of construction they invoke, they must show that testator's nephews were both general and residuary legatees, that the bequests to them of a share of the residue was to them in an individual and not in a collective capacity, and that testator has not made an effectual disposition of their shares of his estate, and that as to such shares he died intestate.

In ascertaining testator's intention regarding the distribution of this residue of his estate, it should be borne in mind that he was a competent lawyer, that he had a very extended experience in the construction of wills as surrogate of Essex county for a number of years, that the second codicil, by which he designated this fund as the residue of his estate, was executed some months after his nephews had died, that by this codicil he changed the entire disposition of his estate and indicated that the principal objects he sought to accomplish by his will and codicils were to provide for his sister and his widow, and for the care of his burial plot, and to this end he directed that all bequests given by his will should abate, if necessary, to carry out these purposes, and he further directed that the provision made for his widow should be in lieu of dower.

He evidently had no intentions of dying intestate, as pointed out by Vice-Chancellor Van Fleet in *Moore* v. *Moore, supra.* He not only attempted to dispose of everything he owned, but actually made provisions by the will and codicils disposing of about $108,000 while his estate amounted to but about $60,000.

To hold that testator intended that these lapsed legacies of his nephews should not fall into the residue of his estate, but should go to his widow and next of kin, together with the deceased nephews' share of the residue, if they were entitled to

any, would require the most technical construction of the will and codicils, and would do violence to the manifest purposes of the testator, and would be in conflict with the construction which the widow herself placed upon the testatmentary papers.

For seventeen years from testator's death in 1891 to her death in 1908, Mrs. Moore enjoyed the income from the fund of $50,000, which had been created for her by the abatement of all the legacies, and by the inclusion therein of the amount of the two legacies in question. During all that period she never asserted that these legacies had lapsed and that as to them, testator had died intestate and that she as a widow was entitled under the statute, to one-half of their amount, it was left for her personal representatives to make that claim, and to support it they must take the position that while testator thought the income of $50,000 to which he expressly limited her interest in his estate, sufficient for his widow, for whose care the second codicil shows him to have been especially solicitous, yet that on the death of his widow he intended to die intestate as to nearly one-fifth of his estate, and that her personal representatives, none of whom are mentioned or referred to in the will or codicils, should have this portion of his estate in preference to his relatives and friends whom he sought to make the objects of his bounty by the provisions of his will.

I think it apparent from the will and codicils that testator did not intend to die intestate as to any part of his estate, and that he succeeded in avoiding any intestacy by the provisions made for the distribution of his estate, including the residue, which he directed to be distributed among those to whom he gave money bequests in his will, as a class, and not as individuals, in proportion to their respective moneyed legacies, and that he had a class instead of individuals in mind, in the distribution of the residue, is further apparent by his inclusion therein of Mrs. Stanwood and Mrs. Walsh as moneyed legatees, who otherwise might not have been so regarded, and by the limitation of the amount to be paid to the cemetery company as a residuary legatee to $100, although he had made a moneyed bequest of $400 to the cemetery company by his will.

Another significant circumstance indicating testator's intent is the fact that the second codicil was made months after the decease of the testator's nephews, when it is not unreasonable to suppose that he knew of their death, and he evidently thought the provisions he had made in this codicil, and in the twentieth clause of the will referred to therein, were sufficient to dispose of the residue of his estate as he desired, without further direction, and serves to indicate that testator's original intention was to dispose of the residue to a class and not to particular individuals, and that he was satisfied that he had done so.

From my consideration of this case I think the correct and controlling rule to be applied is that stated in *Tindall's Executors* v. *Tindall, 24 N. J. Eq. 512:*

"That the residuary legatee is entitled as well to a residue caused by a lapsed legacy or an invalid or illegal disposition as to what remains after payment of debts and legacies.

"The only exception to the rule is that where the words used show an intention on the part of the testator to exclude from the operation of the residuary clause certain portions of the estate, such intention as gathered from the whole will must not be defeated. Or the rule, embracing the exception, as stated in some of the books, is that the residuary legatee must be a legatee of the residue generally and not partially so only."

This rule rests on the presumption that a testator by incorporating in his will a general residuary clause, evidences his intention not to die intestate as to any of his personal property, and it is presumed he took the particular legacy from the residuary legatee only for the benefit of the particular legatee. Giving effect to these presumptions or inferences as to the intention of the testator, which are of course *prima facie* merely, the cases in our state hold that if a legacy of personal property lapses, or proves ineffectual the subject-matter thereof will inure to the benefit of the general residuary legatee, if there is one, and not to the testator's next of kin, or heirs-at-law. *Sandford* v. *Blake, 45 N. J. Eq. 248; Barnet* v. *Barnet, 40 N. J. Eq. 380; Huston* v. *Read, 32 N. J. Eq. 591; Garthwaite* v. *Lewis, 25 N. J. Eq. 351; Macknet* v. *Macknet, 24 N. J. Eq. 277; Shreve* v. *Shreve, 17 N. J. Eq. 487.*

My conclusion is that the legacies to testator's nephews lapsed, and became part of the residue; that testator did not die intestate as to any part of his estate, and that the fund now in the hands of the executor, which constitutes the only residue of the estate, is to be divided and distributed as directed by the testator in the twentieth clause of his will, among the moneyed legatees, and not among the testator's next of kin.