(No. 18961.

EDWARD LEVINGS *et al. vs.* JOSEPH P. WOOD *et al.*—(ADA WOOD DODSON *et al.* Plaintiffs in Error, *vs.* MARY B. CARNAHAN *et al.* Defendants in Error.)

*Opinion filed February 21, 1930—Rehearing denied April 2, 1930.*

ATKINSON & NICHOLS, DOYLE, SAMPSON & GIFFIN, and BERENICE J. AYER, (C. J. DOYLE, and A. W. NICHOLS, of counsel,) for plaintiffs in error.

TROGDON & DOLE, ACTON, ACTON & SNYDER, and CHARLES MCKNIGHT, guardian *ad litem*, (WILLIAM M. ACTON, of counsel,) for defendants in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

In a proceeding in the circuit court of Edgar county to construe the will of John B. Wood, deceased, the chancellor entered a decree disposing of legacies which had been

left to several parties who pre-deceased the testator. From this decree certain heirs-at-law of the testator appealed to the Appellate Court. That court entered judgment reversing the decree in part and remanding the cause. The case is here on *certiorari*.

The first paragraph of the will involved provided for payment of funeral expenses and debts. By the second paragraph the testator bequeathed to his brothers, Jonathan C. Wood and Joseph P. Wood, $25,000 each, and a like amount to his niece Miriam S. Wood. By this paragraph he also bequeathed the sum of $1000 to each of five other named legatees, including Marcia Brown, and directed that the several legacies provided for by it be paid within six months. By the third paragraph he devised a farm in Edgar county to Jesse C. Buckler and Louisa Buckler, and a house and lot in Paris, Illinois, to Mary F. Brown Roberts. By the fourth paragraph he ordered the remainder of his estate, real, personal or mixed, to be sold at public sale under certain prescribed terms. The fifth paragraph was as follows:

"Fifth—After all properties of my estate is sold, money collected, taxes, expenses and executors paid, I give and bequeath to each of my nephews and nieces as follows: To Mary L. Wood the sum of $15,000; to Glenn C. Wood the sum of $15,000; to Jennie C. Wood the sum of $15,000; to Ada Wood Dodson the sum of $15,000; to Otho Wood the sum of $15,000; to Adria Wood Dodson the sum of $15,000; to Daniel B. Wood the sum of $10,000; to Edwin C. Wood the sum of $10,000. All of the above parties of Bardstown, Kentucky. I also give and bequeath to the children or heirs of Jesse C. Buckler and Louisa Buckler, namely, to Adria Buckler the sum of $5000; to Belvia Buckler the sum of $5000; to Jessie L. Buckler the sum of $5000; to Ona F. Buckler the sum of $5000; to Dennie Wood Buckler the sum of $5000. The amount of legacy so bequeathed to the said Dennie Wood Buckler, shall by

his parents be deposited in bank at interest or may loan on real estate until said boy arrives at the age of twenty-one years. Should there be a balance or remainder after all legacies are paid, it shall be equally divided between all those who have shared any part or parcel in my estate, executors and all shall share and share alike. I hereby nominate and appoint Stephen I. Headley and Edward Levings as my executors with full power to make all conveyances of land and title, execute all deeds necessary to carry out and execute the provisions of this instrument of writing and give to each of them $5000 for their services as executors."

The bill to construe was filed by the executors above named. It alleges that the testator died on August 22, 1925, that his will was admitted to probate in the county court of Edgar county on September 21, 1925, and that the executors named therein duly qualified as such. The bill alleges that Jonathan C. Wood, Marcia Brown and Ona Buckler died before the testator; that the heirs of Jonathan C. Wood are his children, Ada Wood Dodson, Otho Wood and Adria Wood Dodson; that the heir of Marcia Brown is her sister, Mary F. Brown Roberts; that Ona F. Buckler left her surviving her husband, Howard Porter, and an infant son, Howard Vernon Porter, and that these heirs are claiming the lapsed legacies. All of said heirs and devisees were made defendants. Answers were filed by some of the defendants and default duly taken against the others.

The chancellor found that the court had jurisdiction and that a construction of the will was necessary; that Ona F. Buckler, Jonathan C. Wood and Marcia Brown died prior to the death of the testator, leaving heirs as named in the bill; that the legacy to Ona F. Buckler did not lapse but vested in her son, Howard Vernon Porter; that Jonathan C. Wood and Marcia Brown were not residuary legatees under the provisions of paragraph 5 of the will; and that

the legacies of Jonathan C. Wood and Marcia Brown lapsed and sank into the residuum, "and should be distributed equally among the residuary legatees." Decree was entered accordingly. Adria Wood Dodson, Ada Wood Dodson and Otho Wood, the heirs of Jonathan C. Wood, prayed an appeal to the Appellate Court. The Appellate Court sustained the decree in so far as it held that the legacies to Jonathan C. Wood and Marcia Brown lapsed and went into the residuum, but reversed the portion which gave the legacy of Ona F. Buckler to her son, Howard Vernon Porter, ordering this share to be included in the residuum and distributed accordingly. Adria Wood Dodson, Ada Wood Dodson and Otho Wood are plaintiffs in error here. Howard Vernon Porter has assigned cross-error, praying reversal of the Appellate Court judgment in holding that the bequest to Ona F. Buckler lapsed.

Plaintiffs in error assert that the Appellate Court was right in holding that the legacy to Ona F. Buckler lapsed. As to the legacies to Jonathan C. Wood and Marcia Brown they contend that these should not go into the residuum but should be distributed to the heirs-at-law of the testator as intestate property. They further contend that the heirs-at-law are entitled to share in the residuum to the extent of three twenty-fifths thereof, on the theory that there was a residuary bequest to each of the three deceased parties, and that it should go to the heirs in the same manner as the lapsed specific bequests.

In determining whether the decree of the chancellor was right in holding that the legacy to Ona F. Buckler did not lapse but went to her heir by way of substitution, there must be borne in mind the rule that all the clauses and words of the will should, if possible, be construed as intended to have some meaning and to have been used for some purpose and should be given effect in arriving at the intention of the testator. (*Hollenbaugh* v. *Smith,* 296 Ill. 558; *Defrees* v. *Brydon,* 275 id. 530; *Bergman* v. *Arnhold,* 242 id. 218.)

After expressing the above rule in *Hollenbaugh* v. *Smith, supra,* this court further said, referring to the words and clauses of the will: "None can be arbitrarily rejected as meaningless or surplusage."

It has been held in several cases that where a will devises property to one "or his heirs," or directs the executors to distribute property to one "or his heirs," it creates an alternative devise, under which the heirs may take by substitution. (*Pearson* v. *Olson,* 310 Ill. 252; *Straw* v. *Barnes,* 250 id. 481; *Ebey* v. *Adams,* 135 id. 80.) The language involved in the present case is: "I also give and bequeath to the children or heirs of Jesse C. Buckler and Louisa Buckler, namely," (here setting out five names, including Ona F. Buckler.) Obviously the word-order and construction are not such as to clearly and forcefully create a substitutional gift to the heirs of Ona F. Buckler under the holdings of the above cases. On the other hand, nowhere else in the will does the word "heirs" appear. Effect may be given to the words "or heirs" by construing them to pass a gift over, under the principle of the cases cited. Not to do so means that they must be absolutely disregarded as surplusage. No one can have heirs while living. (*Ebey* v. *Adams, supra.*) There is nothing in this or any other paragraph to negative the propriety of a construction which gives them effect. So far as awkwardness of the manner of expression is concerned, attention may appropriately be directed to the portion of the fifth paragraph which immediately follows the words under consideration. While the sentence, "The amount of legacy so bequeathed to the said Dennie Wood Buckler, shall by his parents be deposited in bank at interest or may loan on real estate until said boy arrives at the age of twenty-one years," may convey an understandable meaning it is clumsily phrased, and such style of expression not only shows no tendency toward redundancy but rather a proclivity to economize on words to a very noticeable degree. Having in mind this latter portion

of the paragraph, to round out the proper meaning of which it is obviously necessary to supply the sense of a number of additional words, it is evident that it would be going no farther to supply the sense of the word "their" between "or" and "heirs," making the clause read: "I also give and bequeath to the children or their heirs of Jesse C. Buckler and Louisa Buckler, namely." The clause in this form could still be improved upon, but its meaning would be unmistakable. The propriety of supplying words, under proper circumstances, to effectuate the testator's intention has frequently been recognized by this court. *McClure* v. *McClure,* 319 Ill. 271; *Jordan* v. *Jordan,* 281 id. 421; *Lash* v. *Lash,* 209 id. 595; *Blinn* v. *Gillett,* 208 id. 473; *Glover* v. *Condell,* 163 id. 566.

It is also in order to look at the surrounding circumstances in this connection. In *Wardner* v. *Baptist Memorial Board,* 232 Ill. 606, this court said: "In seeking the intention of the testator as to the construction and interpretation that should be placed upon ambiguous terms or clauses in a will, the relation of the parties, the nature and situation of the subject matter, the purpose of the instrument and the motives which might reasonably be supposed to influence him in the disposition of his property may properly be considered." From the certificate of evidence it appears that the testator, a bachelor, made his home with Jesse and Louisa Buckler for more than forty years. When Louisa Buckler's health became bad the testator went to live with Ona Buckler Porter and her husband, and had been living there four years before the death of Ona. These considerations are in themselves of considerable significance. The record does not show what the testator's physical condition was during the period immediately preceding his death, which came two weeks after that of Ona Buckler Porter. It may properly be assumed that he knew of her death, and there is no reason to believe that he was incapable of making such new testamentary disposition for

her infant son as any individual might reasonably be expected to do under the circumstances if he had not already done so. Some significance may properly be accorded to the fact that he did not, under these circumstances, alter the will. *English* v. *Cooper,* 183 Ill. 203; *In re Ives' Estate,* 182 Mich. 699, 148 N. W. 727; *Page* v. *Gilbert,* 32 Hun, 301.

In view of all the foregoing considerations we are of the opinion that the chancellor was right in decreeing that the $5000 legacy to Ona F. Buckler did not lapse but went as a substitutional gift to her infant son and heir, Howard Vernon Porter.

The further issue involved in the case presents the question as to whether the lapsed legacies to Jonathan C. Wood and Marcia Brown should go into the residuum or descend as intestate estate to the testator's heirs-at-law. Plaintiffs in error insist that the situation is governed by section 11 of the Statute of Descent, (Cahill's Stat. 1929, chap. 39, par. 11,) or, in the event that this does not apply, that the cases of *Dorsey* v. *Dodson,* 203 Ill. 32, *Crawford* v. *Cemetery Ass'n,* 218 id. 399, and *Belleville Savings Bank* v. *Aneshaensel,* 298 id. 292, are conclusive that the legacies descend as intestate estate.

It is unnecessary to consider at length the argument that section 11 of the Statute of Descent, *supra,* is applicable to this case. That section is by its terms applicable to lapsed devises or legacies where the devisee or legatee is a child or grandchild of the testator. It was enacted to prevent the lapsing of devises and legacies to children or grandchildren of the testator. (*Walker* v. *Walker,* 283 Ill. 11; *Brewick* v. *Anderson,* 267 id. 169.) It has no application to this case, where the one legatee was a brother and the other a second cousin.

The cases of *Dorsey* v. *Dodson, supra, Crawford* v. *Cemetery Ass'n, supra,* and *Belleville Savings Bank* v. *Aneshaensel, supra,* have established the rule in Illinois

that when specific legacies are given to several legatees and the residue is bequeathed to the same legatees, the residue will not include a lapsed legacy to one of them but it will descend as intestate estate. The general rule that specific lapsed legacies fall into the general residuary fund and are to be distributed among the residuary legatees is, however, recognized, and the principle of the cases cited is stated to be "an exception to this general rule." (*Belleville Savings Bank* v. *Aneshaensel, supra.*) The reason for the exception was thus stated in *Dorsey* v. *Dodson, supra:* "To hold, in such a case, that the testator intended a lapsed legacy to fall into the residuum was said in *Craighead* v. *Given,* 10 S. & R. 351, to hold that the testator intended to bequeath to one who died a portion of the residue happening in consequence of his own death,—a construction which could never be supported." In the present case the residuary bequest is not to individuals already named as legatees, but to "all those who have shared any part or parcel in my estate, executors and all shall share and share alike." Not only does this not say that the residue shall go to all those already named as legatees, but it goes still farther and introduces, for the purpose of receiving a share, the two executors, who were not named as legatees at all. Counsel's contention that they were so named is not tenable, as will appear from analysis of the language of the will above quoted. (*In re Pentz's Estate,* 200 Pa. St. 2, 49 Atl. 361.) Moreover, in the fifth paragraph reference is made to paying the executors along with the payment of "taxes and expenses," which is absolutely inconsistent with their being considered as legatees.

In *Blackstone* v. *Althouse,* 278 Ill. 481, this court has quoted from Jarman on Wills (vol. 1,—6th ed.—232,) the following definition of a gift to a class: "A gift to a class has been defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in

equal or in some other proportion, the share of each being dependent for its amount upon the ultimate number of persons." In *Volunteers of America* v. *Peirce,* 267 Ill. 406, it was said: "Whether a devise or a bequest is to a class or to the individuals constituting the class distributively depends upon the language of the will. If from such language it appears that the number of persons who are to take and the amounts of their shares are uncertain until the devise or bequest takes effect, the beneficiaries will generally be held to take as a class." Measured by this language, what the will in the present case did was to make a residuary gift to a class, the personnel of which, together with the amount of the several shares, could only be determined upon the death of the testator. Only those legatees surviving could share in the residue. The deceased legatees, Jonathan C. Wood and Marcia Brown, were never members of the class and had no shares under the residue. The reason for the exception stated in the *Craighead case, supra,* that the testator could not have intended "to bequeath to one who died a portion of the residue happening in consequence of his own death," therefore fails, and upon authority as well as principle the general rule that the specific legacies fall into the residue applies. *Allen* v. *Moore,* 86 N. J. Eq. 357, 98 Atl. 420; *In re Hoffman's Will,* 124 N. Y. Supp. 680, 67 Misc. 334.

Counsel for plaintiffs in error argue that the language employed in the clause creating the residuary bequests will not support the above construction; that "should there be a balance or remainder after all legacies are paid, it shall be equally divided between all those who have shared any part or parcel in my estate, executors and all shall share and share alike," refers to all those previously named as legatees; that the language "have shared" necessarily indicates that the testator was thinking of, and meant to designate, all the legatees whose names he had already written down in the will, and that the sense of the language is such that

it can only be held to speak as of the time the testator wrote the will rather than the time of his death. But no one of the legatees whom the plaintiffs in error allege to be named by this language could "share" or could "have shared" anything until the testator's death. Under such a contention these words were used in a manner vain as well as strained. It might also be pointed out that at the time of writing the words "have shared," the testator had not, in fact, yet written down the names of the executors. Such a construction as plaintiffs in error urge is not the proper one. A will speaks only from the death of the testator. (*Thompson* v. *Thompson Carnation Co.* 279 Ill. 54.) Having this in mind, it is evident that the words in question express a clear purpose to give the residue in equal shares to such persons as should meet the double condition of having been named in the will to receive something and of having survived to receive it. It is a general rule to so construe a residuary clause as to prevent the intestacy of any part of the testator's estate unless there is an apparent intention to the contrary. (*Dunn* v. *Kearney,* 288 Ill. 49.) There is ample reason for such construction here. The chancellor rightly decreed that Jonathan C. Wood and Marcia Brown were not residuary legatees and that the amounts of their legacies went into the residuum. The Appellate Court rightly upheld this portion of the decree.

In so far as it reverses the judgment of the circuit court of Edgar county the judgment of the Appellate Court is reversed. In so far as it affirms the judgment of the circuit court of Edgar county the judgment of the Appellate Court is affirmed. The judgment of the circuit court of Edgar county is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment of Appellate Court reversed in part.*
*Judgment of circuit court affirmed.*