(No. 37338.

Ben Weir *et al.,* Appellees, *vs.* William Leafgreen,
Appellant.

*Opinion filed November 30, 1962.*

WOOLSEY, STICKNEY & LUCAS, of Galesburg, and KING, ROBIN, GALE & PILLINGER, of Chicago, for appellant.

BARASH & STOERZBACH, of Galesburg, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This case involves a suit by the residuary devisees to have certain provisions of the will of Mary Weir Deatherage construed. It is the plaintiffs' contention that the will as written is clear and unambiguous and that no extrinsic evidence as to the testatrix's intent is, therefore, admissible. The defendant, William Leafgreen, on the other hand, contends by counterclaim that certain language in the will is ambiguous and that the admission of extrinsic evidence, the nature of which is hereinafter set forth, establishes the existence, at the death of the testatrix, of an option on his part to purchase certain real estate. The counterclaim herein discloses that this alleged option was exercised by the appellant and that he tendered the purchase price specified in the will to the testamentary trustee. The circuit court of Knox County, on plaintiffs' motion, entered a decree dismissing the counterclaim for want of equity and refused to allow the filing of an amended counterclaim. This order provided that as to those issues decided by the dismissal there was no reason for delaying its enforcement or an appeal therefrom. The title to a freehold is so put in issue by the pleadings that the determination of the case

necessarily involves a decision with respect to the ownership of the property in question and this court has jurisdiction of this appeal. *Ashton* v. *Macqueen*, 361 Ill. 132; *Bromberg* v. *Kulp*, 398 Ill. 449; *Sandra Frocks, Inc.* v. *Ziff*, 397 Ill. 497; *Schiro* v. *Gould & Co.* 18 Ill.2d 538.

No construction of the will as written, without resort to extrinsic evidence, was made by the trial court. The issue before this court is, therefore, simply whether or not extrinsic evidence should be considered by the trial court to aid in its construction of this will.

The will contains four main articles, the first two of which provide for the transfer of property through the exercise by designated individuals of options to purchase (one stated to have been executed *inter vivos*). The money received through the exercise of these options is then directed to be paid by the trustee to designated charities and individuals. Then follows an extensive article wherein numerous household and personal items are given to various persons, including appellant and his wife, and one charitable institution. Finally, article IV provides for the sale of an antique violin and "the Henderson property" and for the disposition of the residue of the estate to certain of the appellees, who are, or whose parents were, nieces and nephews of decedent.

The provision under question, section I of article II of the will, provides as follows:

"Since my late husband's death, William Leafgreen and I have farmed the farm land owned by me on the partnership basis—I furnishing the land, and he furnishing the equipment and doing the farming. The proceeds of anything sold from the farm has been divided equally. The said William Leafgreen has a ten-year lease expiring on March 1, 1948, and, in the event of my death prior to said expiration, it is my Will that my Trustee herein be appointed to extend said lease for an additional period of five (5) years on the same terms and conditions in the event said William Leafgreen desires to have the same so extended. In accordance therewith, I give, devise and bequeath to the First Galesburg National Bank & Trust Company of Galesburg, Illinois, as Trustee, for the uses and purposes as hereinafter set out, my farm consisting of One Hundred Seventy-three (173) acres, more or less, my undivided

one-half interest in any livestock, grain, hay or other produce owned by me in connection with said farming operations, plus Twenty-five Hundred ($2500.00) Dollars to be kept on hand as a working capital for the purchase of additional livestock and feed for same as needed, said Trustee to continue the operation of said farm, as aforesaid, and to extend said partnership agreement and lease with said William Leafgreen to March 1, 1953, at which time, or within thirty (30) days thereafter, said William Leafgreen is to be given the right, privilege and option of purchasing said farm for the sum of Ten Thousand ($10,000.00) Dollars cash, and my said Trustee is hereby authorized to execute a good and sufficient deed for said property upon payment of said sum, as aforesaid, without notice, hearing or court order. It is my further Will, instruction and direction that said Trustee, as soon after the receipt of said Ten Thousand ($10,000.00) Dollars as is practical, shall make distribution of same as follows:"

(Paragraphs (1) through paragraph (6) of this section provide that various amounts of this $10,000 are to be paid to certain charitable institutions and to certain individuals, including each of Leafgreen's children.)

"(7) During the last year of the extended lease with William Leafgreen, as aforesaid, all cattle and hogs are to be fed and marketed, except twenty-five (25) head of cows and heifers and twenty-five (25) head of brood sows, same to be selected by William Leafgreen and my Trustee, my half interest of this to be given to him. He also to have all grain and hay left on premises upon the expiration of his renewed lease.

"(8) All cash remaining in the hands of my Trustee from farming operations carried on by it after my death and from the sale of the livestock not going to William Leafgreen to go to the same persons mentioned in Number 6 of this Article II."

Appellant alleged in his counterclaim that he was associated with the decedent and her husband either as an employee or tenant for almost 50 years, until her death in 1960. Since 1919 until decedent's death appellant took care of the grounds and garden at decendent's residence 1½ miles away and delivered to her eggs, cream, and butter for her own personal use without compensation. In 1936 when decedent's husband died she asked Leafgreen to stay and take care of the operation of her farms; she executed a 10-year lease to the farm in question expiring March 1, 1948.

Leafgreen's entire family were apparently intimate with the decedent and since 1938 at least one member thereof called on her daily. Her meals since 1946, when she suffered a heart attack, were prepared in Leafgreen's home and taken to her residence. The decedent left a note for appellant containing her burial instructions and asking that in lieu of flowers those desiring could give Leafgreen money for a memorial fund to be sent by him to the Arthritis Fund. An obviously close relationship between appellant and the testatrix was alleged.

At the time the will was executed the decedent was 78 years old and was suffering from severe arthritis and had recently suffered an attack of jaundice. The decedent lived until December 1, 1960, and was 96 years of age at her death. She extended Leafgreen's lease orally each year from March 1, 1948, until her death.

It is the defendant's contention that the date for the exercise of the option, March 1, 1953, or within 30 days thereafter, following a 5-year period of leasing the property from the trustee, was inserted by the testatrix at a time when she believed that she could live only a few years and was intended to prevent imposing upon Leafgreen at her death an immediate burden of paying $10,000 in cash. When construed in light of the surrounding circumstances the will, according to appellant, clearly evidences an intent by the testatrix that he should have an option to purchase the farm at her death. In addition appellant advances the proposition that even if the language of the will itself, when construed in light of the surrounding circumstances, does not express this intention, the plan of the will as a whole indicates that the probability of the intention of the testatrix to make the gift is so strong that a contrary intention cannot be supposed and that a gift to him of the option was made under the doctrine of gift by implication.

Appellees, on the other hand, contend that the will is clear and unambiguous, that the testatrix's intention as ex-

pressed must be given effect and that extrinsic evidence is not admissible to alter, detract from or add to the terms of the will. To say that the appellant has an option to purchase the farm after the death of the testatrix on December 1, 1960, in view of the fact that the only language regarding this option provides that the trustee may extend the lease to March 1, 1953, "at which time, or within thirty (30) days thereafter, said William Leafgreen is to be given the right, privilege and option of purchasing said farm," would, according to appellees, be changing, not construing, her will and could only be based upon conjecture.

The court is not, of course, justified, under the guise of construing a will, in creating a wholly new gift where the testator has made no provision whatever for the contingency that has occurred or where it appears that in view of subsequent events a particular provision would probably have been made had the testator thought of their occurrence. (*Lenzen* v. *Miller,* 378 Ill. 170; *First Trust and Savings Bank of DeKalb* v. *Olson,* 353 Ill. 206.) Where, however, the will is ambiguous extrinsic evidence is admissible, although not for the purpose of contradicting or adding to the terms of the will nor to conjecture as to the testator's probable intent. Such evidence is considered for the purpose of determining, initially, whether or not there is an ambiguity and for the further purpose of enabling the court to construe the will in light of the testator's surrounding circumstances. (*Decker* v. *Decker,* 121 Ill. 341; *Cahill* v. *Michael,* 381 Ill. 395.) In addition if, upon consideration of the will as a whole and the surrounding circumstances, it should be determined that, even though exact language supporting the particular gift cannot be found, no reasonable doubt as to the intention to make the gift can exist, the doctrine of gift by implication is applicable. *Stern* v. *Stern,* 410 Ill. 377; 1953 U. Ill. L.F. 303.

Appellant devotes much of his brief and oral argument in attempting to establish that portions of the will were

patently ambiguous and that others were latently ambiguous. We do not feel that it is necessary to decide whether or not a particular ambiguity is patent or latent and hold that, if the will, when considered as a whole and in light of the surrounding circumstances, is ambiguous, extrinsic evidence may be considered in construing it. *Cahill* v. *Michael,* 381 Ill. 395; *Lenzen* v. *Miller,* 378 Ill. 170; 1 James, Illinois Probate Law & Practice, p. 502 (1951).

The date mentioned in the will for the exercise of the option, March 1, 1953, or within 30 days thereafter, was determined by the testatrix with reference to the expiration of her 10-year lease with appellant on March 1, 1948. The trustee was directed to extend this lease for five years from "said expiration date" to March 1, 1953. Subparagraph (7) also refers to the "extended lease" and the "expiration of his renewed lease," indicating that decedent based the date for exercising the option upon the event of the original lease's expiration and not because of any independent significance to her of the date March 1, 1953. For this reason appellant suggests that testatrix must have necessarily intended that the option, in the event of her death after April 1, 1953, should be exercisable after the expiration of the lease in existence at her death. Subparagraph (8) refers to the sale of livestock directed in subparagraph (7) where the "extended" and "renewed" lease is mentioned and provides for the disposition of certain cash "after my death," indicating that perhaps the decedent did intend, in accordance with appellant's theory, that this section of her will should be operative at her death whenever it occurred. At least the will is sufficiently ambiguous on this question so as to require the admission of extrinsic evidence.

The provision calling for a period of several years within which the appellant could raise the necessary $10,000 was, it is alleged, inserted for appellant's exclusive benefit. This fact, according to appellant, negatives any idea that the decedent, who wanted to give appellant every opportunity

to have the farm, would ever have intended the date March 1, 1953, or within 30 days thereafter as an absolute limitation upon his right to exercise the option. The fact that she failed to change her will knowing of the passing of this period, and herself extended the lease annually until her death, also indicates, according to appellant, that she did not intend that the time mentioned was to be an absolute limitation. The factor of failing to change a will subsequent to the testator's obtaining knowledge that a particular condition cannot be performed has been given significance by this court, (*Levings* v. *Wood,* 339 Ill. 11,) and should have been considered by the trial court in this case along with the appellant's other arguments. Certainly the questions presented by these arguments cannot be resolved without a consideration of all the extrinsic evidence that can competently be introduced by both sides.

Certain other circumstances and provisions of the will tend to support the conclusion that the decedent's intent relative to this option is unclear. Appellant alleged that the property in question had a market value of $25,000 in 1942 when the will was executed. Because this option to purchase was from the beginning very valuable, appellant argues that the testatrix was certain that it would be exercised at her death, if appellant was given adequate time to raise the money. In support of this contention he points out that all of the sums payable to three named charities (a cemetery to provide for the care of the family lots, a kindergarten fund that was to use a portion of its gift for an annual memorial dinner on decedent's husband's birthday, and a school for the colored race), were intended to be paid out of this fund. In this connection the will provides "said trustee, as soon after the receipt of said Ten Thousand ($10,000) Dollars as is practical, shall make distribution of same as follows:" (then follows the charitable and individual gifts). This unequivocal language, coupled with the unlikelihood that testatrix would have intended that these

gifts should be dependent upon the happenstance of her death so that Leafgreen could exercise the option prior to April 1, 1953, indicates, appellant contends, that she was certain that at some time after her death the $10,000 could under her will be paid by him in exchange for a deed to the farm.

In addition, testatrix in subsequent provisions of the will bequeathed certain household belongings located in the house situated on the farm in dispute to Leafgreen and his wife and directed that "my painting and horse pictures are to remain on walls as I leave them" and "the horns to remain over the north door as they have for forty years." Obviously, the appellant contends, these directions of the decedent cannot be carried out unless Leafgreen is able to exercise the option to purchase, indicating that the decedent felt that at some time after her death said option could be exercised by him.

In view of the close relationship of the appellant and decedent, especially with reference to this particular farm, the annual extensions of the lease until decedent's death, those provisions of the will mentioned above tending to indicate that the time for the exercise of the option was primarily fixed with reference to the expiration date of the extended lease, and the other provisions of the will relating to the gifts to the charities and of the household items, we hold that the will is ambiguous with reference to Leafgreen's option to purchase the farm in dispute. The issues presented by the appellant's amended counterclaim cannot, therefore, be properly evaluated by the trial court without resort to extrinsic evidence.

Many of the extrinsic circumstances alleged, for example the annual extensions of the lease by the decedent, occurred subsequent to the execution of the will. Although generally only those extrinsic circumstances in existence at the time the will is executed are considered, (*Dahmer* v. *Wensler,* 350 Ill. 23; *Lydick* v. *Tate,* 380 Ill. 616,) this is not an in-

flexible rule. Where subsequent events are indicative of the testator's intent at the time of execution they should be considered, (*Levings* v. *Wood,* 339 Ill. 11,) especially where, as in this case, the ambiguity would never have arisen but for the occurrence of subsequent events. *Krog* v. *Hofka,* 413 Ill. 290.

The decree of the trial court dismissing defendant's first counterclaim and refusing to allow the filing of the amended counterclaim is reversed with instructions to permit appellant to file his amended first counterclaim and to allow the introduction of extrinsic evidence relative thereto.

*Reversed and remanded, with directions.*