(No. 11283.—Judgment affirmed.)

VERA THOMPSON, Plaintiff in Error, *vs.* THE J. D. THOMPSON CARNATION COMPANY *et al.* Defendants in Error.

*Opinion filed June 21, 1917.*

1. CONTRACTS—*when contract between stockholders to secure control of corporation is not illegal.* Contracts by which the owners of a majority of the stock in a corporation agree to vote for certain persons for directors, so as to secure to themselves the control and management of the corporation, are not illegal or void so long as no fraud is committed on the corporation or wrong done to the other stockholders.

2. SAME—*difference between a will and a contract as to time of taking effect.* A will speaks from the death of the testator, while a contract is mutually binding upon each and all the parties thereto from the date of its execution.

3. SAME—*what contract between stockholders of corporation is not a testamentary disposition of property.* A contract between the stockholders of a corporation that their stock shall be voted in a certain way to keep control of the corporate affairs, and that a certain number of shares owned by one of the parties to the agreement shall, in case of the death or absence of the owner, be voted

by another, the heirs, in case of death intestate, to be paid the full par value of their interest in said shares, and that the agreement shall be binding on the heirs and executors of the parties thereto, is not void as an attempted testamentary disposition of property.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

CHURCH, SHEPARD & DAY, (CLYDE L. DAY, of counsel,) for plaintiff in error.

OLIN & LARAWAY, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error, Vera Thompson, filed her bill in chancery in the circuit court of Will county against defendants in error, the J. D. Thompson Carnation Company, Helen T. Fish, Charles M. Fish, Fannie T. Quintero, P. W. Peterson, B. Wunderlich and Frank M. Fairfield, who with her constitute all of the stockholders in that company, to compel the transfer to her of six and one-half shares of stock in the company which she claimed as owner. Defendants in error answered the bill, denying that plaintiff in error was the owner of the stock or entitled to have the said stock transferred to her or to the relief prayed. Replications were filed to the answer, and the cause was heard by the court, which entered a decree finding that plaintiff in error was the owner of and entitled to have one and one-half shares of the stock in controversy transferred to her but denied relief to her as to the five other shares. On appeal to the Appellate Court for the Second District the decree of the lower court was affirmed. A writ of *certiorari* was allowed by this court and the cause is now before us pursuant to the mandate of such writ.

No question is raised here against the decree as respects the one and one-half shares of stock decreed to plaintiff in

error.   As to the other five shares of stock, the plaintiff in
error concedes her rights in the premises depend upon the
validity and effect of a certain agreement entered into be-
tween J. M. Thompson, her father, Helen T. Fish, her sis-
ter, and Charles M. Fish, her sister's husband, made No-
vember 10, 1911.   This contract is as follows:

"We, the undersigned, J. M. Thompson, being the owner this
date of five shares of stock in the J. D. Thompson Carnation Com-
pany, Helen T. Fish, being the owner of two hundred and eleven
(211) shares of stock of the J. D. Thompson Carnation Company,
and Charles M. Fish, being the owner of seventy-six (76) shares
of stock of the J. D. Thompson Carnation Company, all said par-
ties of the city of Joliet, county of Will and State of Illinois, agree.
together as follows:

"*First*—That we each and every one shall vote our respective
shares of stock in the above mentioned company at all regular,
special or adjourned meetings of stockholders of said company for
each other for directors of said company and for no other person
or persons.

"*Second*—That we, for the best interests of the company, de-
sire to have the following named persons elected as officers of the
said above mentioned carnation company:   J. M. Thompson for
president, Helen T. Fish for vice-president, Vera Thompson for
treasurer and Charles M. Fish for secretary and general manager.

"*Third*—That in case of the death of J. M. Thompson, Helen
T. Fish shall have the voting of the five shares of stock standing in
the name of J. M. Thompson and that the dividends on the above
five shares shall be paid to Vera Thompson.

"*Fourth*—That in case of the absence of J. M. Thompson from
any meeting of stockholders of the above mentioned company Helen
T. Fish shall vote the five shares of stock standing in the name of
J. M. Thompson on books of said company.

"*Fifth*—That we shall not buy or sell any shares of stock of
the above mentioned company without the written consent of the
undersigned parties.

"*Sixth*—That in case of the death of J. M. Thompson, Vera
Thompson may become a party to this agreement by signing same.

"*Seventh*—That in case of the death of J. M. Thompson, Helen
T. Fish shall pay to J. D. Thompson one-third (⅓) of the par
value of said above mentioned five shares of stock belonging to
J. M. Thompson, said par value being ($166.66) one hundred sixty-
six and sixty-six one-hundredths dollars, and also to Vera Thomp-
son the same amount.

"*Eighth*—That this agreement can be changed or terminated
only by the unanimous written consent of the undersigned parties.

"*Ninth*—That this agreement shall be binding upon the heirs, executors, administrators and assigns of the undersigned parties.

"This agreement is made in duplicate.

"Witness our hands and seals this tenth day of November, 1911.

J. M. THOMPSON,    (Seal.)

HELEN T. FISH,    (Seal.)

CHARLES M. FISH.    (Seal.)"

The J. D. Thompson Carnation Company is an Illinois corporation engaged in the growth and sale of cut flowers at New Lenox, in this State. It has a capital stock of $58,000, divided into 580 shares of the par value of $100 each. Its business and affairs are under the immediate management and control of Charles M. Fish. At the time the contract was made J. M. Thompson was the owner of the five shares of stock now in controversy. He departed this life intestate on January 15, 1912, leaving him surviving a son, J. D. Thompson, and the two daughters above named, as his only heirs-at-law. The stock in the corporation is now so distributed among plaintiff in error and her sister and their friends that the control of the corporation and its affairs depends upon the ownership of this stock. The plaintiff in error now claims to be the owner of two-thirds of this stock,—one-third by descent to her as heir and the other one-third by purchase from her brother of his share as heir. Helen T. Fish claims to be the owner of the five shares by virtue of the contract above mentioned.

Plaintiff in error insists the contract is contrary to the public policy of this State, and void, for the reason it attempts to vest in Helen T. Fish, while she was not the owner of such stock, a perpetual and irrevocable proxy or power of attorney to vote the stock, and lays stress upon the ninth clause of the contract, which makes the contract binding upon the parties thereto, their heirs, executors, etc., as sustaining that contention, in that this clause confers upon Helen T. Fish the power of voting the stock even after the death of J. M. Thompson. Defendants in error insist the contract is not open to this objection, for the rea-

son that by its terms Helen T. Fish became the owner of the stock upon the death of J. M. Thompson, and that during his lifetime he retained the right to vote his stock, subject to the same conditions imposed by the contract upon the other stock owned by Helen T. Fish and her husband. Plaintiff in error's answer to this contention is, that in so far as the contract attempts to dispose of the property after the death of J. M. Thompson it is of a testamentary character, and void for the reason it was not executed in the manner required by the laws of this State for the execution of such instruments. These contentions will be considered in the order above indicated.

The contract confers upon Helen T. Fish no power over the stock during the lifetime of J. M. Thompson except in case of his absence or inability to attend a regular or special meeting of the stockholders of that company, and therefore it cannot be held void under the rule announced in *Luthy* v. *Ream,* 270 Ill. 170, cited by plaintiff in error. It does not divest or attempt to divest J. M. Thompson of his control or ownership of his stock, or his right to vote the same, except that by the first clause it is provided that the parties to the same shall vote their stock for each other for directors and for no other person or persons. Contracts of this character, by which the owners of a majority of the stock in a corporation agree to vote for certain persons for directors so as to secure to themselves the control and management of the corporation, are not illegal or void so long as no fraud is committed on the corporation or wrong done to the other stockholders. (*Venner* v. *Chicago City Railway Co.* 258 Ill. 523.) We held in the case cited that the owners of stock might lawfully contract with each other not to buy or sell stock except for their joint benefit, and that such contracts are not dishonest, violative of the rights of others or in contravention of the public policy of this State. So far as the evidence shows, no fraud was

practiced or intended to be practiced by the contract in question, and in our opinion, in so far as its validity is assailed on these grounds, it must be sustained as a valid exercise of the right of contract.

It is the further contention that the contract is void as an attempt to confer upon Helen T. Fish an irrevocable proxy to vote her father's stock, extending even after the time of his death, or if it was not such, that it is void as an attempted testamentary disposition of such stock. The determination of this question depends upon the construction and effect of the third and seventh clauses of the contract when read in the light of its other provisions. By the third clause it is provided "that in case of the death of J. M. Thompson, Helen T. Fish shall have the voting of the five shares of stock standing in the name of J. M. Thompson and that the dividends on the above five shares shall be paid to Vera Thompson." By the seventh clause it is provided "that in case of the death of J. M. Thompson, Helen T. Fish shall pay to J. D. Thompson one-third of the par value of said above mentioned five shares of stock belonging to J. M. Thompson, said par value being ($166.66) one hundred and sixty-six and sixty-six one-hundredths dollars, and also to Vera Thompson the same amount." If this provision is valid its effect is to make Helen T. Fish the sole owner of the stock on the death of J. M. Thompson, provided she pays J. D. Thompson and Vera Thompson, each, one-third of the par value thereof. Being sole owner she would have the right to vote the stock, and the provisions of this clause would be controlling over clause 3 of the contract as to the dividends. By other provisions of the contract the parties thereto bind themselves to vote the stock in a certain way during the lifetime of J. M. Thompson, and in such manner as to keep the control of the corporation in their hands. From a consideration of the foregoing provisions we think it clear that one of the purposes of the contract was to enable

Helen, T. Fish and her husband to control the corporation even after the death of J. M. Thompson. This the parties sought to accomplish by the above two provisions vesting in her the right to vote the stock, thus giving to her complete dominion and control over it, and requiring her to pay to her brother and sister each the full par value of what would have been their interest in the same had J. M. Thompson died intestate, without disposing of his stock during his lifetime. The agreement by which Helen T. Fish was to acquire this stock upon the death of her father contains all of the essentials of a valid and binding agreement. It is founded on a valuable consideration and became at once binding upon the parties thereto upon its execution. None of the parties thereto could withdraw from the same without the consent of the others. In this respect it is clearly distinguishable from a will or other testamentary disposition of property. As said in *Cawley's Appeal,* 136 Pa. St. 628: "A contract is an agreement between parties for the doing or not doing of some particular thing. The undertaking of one party is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to do and the right to require performance are reciprocal. A will, on the other hand, is simply a statement of a proposition or wish of the maker as it exists at the time. As often as his purpose or wish changes he may change the expression of it. When and why a change may be made depends upon himself, alone. He is answerable to no one for his determination to make one rather than another disposition of his property. After he has written out his will and executed it in accordance with the forms of the law it does not bind him, but so long as he lives he may change his own purpose with or without a reason, and his last purpose, properly written out and executed, is his last will and testament, because death makes any further change impossible. The binding force of a contract comes from the *aggregatio men-*

*tium* of the parties; the binding force of a will comes from
the fact that it is the last expressed purpose of the testator
in regard to the disposition of his property after his own
death.   While he lives it is without force or value, but it
begins to speak when he ceases to do so and is thereafter
heard in his stead."

A will, as above stated, only speaks from the death of
the testator, while a contract speaks from the date of its
execution.   In the instant case the parties to the contract
undertake and agree that during the lifetime of J. M.
Thompson the stock owned by them, respectively, shall be
voted in a certain way, for certain persons for officers and
directors in the corporation; also, that no stock will either
be bought by or sold to anyone except to one of the parties
thereto, and that after the decease of J. M. Thompson there
shall be paid to the parties who might have a beneficial in-
terest in his stock, the full par value of whatever interest
they would have in the stock had he died intestate.   This
contract is mutually binding upon each and all of the par-
ties thereto from the date of its execution.   It could not
be revoked or canceled by any of the parties thereto during
the lifetime of Thompson without the consent of all, and
was intended to be of such character that it might be en-
forced after his death.   By its terms it is made binding up-
on the heirs and executors of the parties thereto.   It im-
poses reciprocal rights and duties upon each of the parties
thereto, and is of such a character that we think it could
have been specifically enforced by any of the parties thereto
in case of an attempted breach.

For the reasons given we think the contract is not void
as a testamentary disposition of the property.   The cases
of *Olney* v. *Howe,* 89 Ill. 556, *Comer* v. *Comer,* 120 id.
420, and *Oswald* v. *Caldwell,* 225 id. 224, do not announce
a different rule.   None of those cases deny the right of the
owner of the property, either real or personal, to make a
valid, binding contract with another, upon a sufficient con-

sideration, in respect to such property, to take effect after the death of one or the other of the parties thereto.

For the reasons given the judgment of the Appellate Court was right, and it will be affirmed.

*Judgment affirmed.*