Marie-Louise Rosenthal, Plaintiff-Appellee, v. The First National Bank of Chicago, as Trustee of the Philip Trust, Created Under the Will of Moise Dreyfus, Deceased, and Known as Trust No. 33705; Michael Reese Hospital and Medical Center; The First National Bank of Chicago, as Executor of the Will of Philip S. Dreyfus, Deceased; The First National Bank of Chicago, as Executor of the Will of Carolyn S. Dreyfus, Deceased; Phyllis S. Dreyfus, a Minor Under California Law, and Diane E. Dreyfus, a Minor, Defendants; Phyllis S. Dreyfus and Diane E. Dreyfus, a Minor, Under the Laws of the State of California, Defendants-Appellants.

Gen. No. 51,049.

First District, Fourth Division.

June 9, 1967.

Petition of guardian ad litem denied July 10, 1967.

Petition of appellant denied July 10, 1967.

Morgan, Halligan, Lanoff & Cook, of Chicago (Samuel M. Lanoff and John A. Cook, of counsel), for Phyllis S. Dreyfus and Diane E. Dreyfus, appellants.

Hoffman & Davis, of Chicago (David I. Hoffman, of counsel), for The First National Bank of Chicago, as Trustee, defendant.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago (Frank D. Mayer, George V. Bobrinskoy, Jr., and Burton E. Glazov, of counsel), for Michael Reese Hospital and Medical Center, defendant.

Spray, Price, Hough & Cushman, of Chicago (Robert S. Cushman and Benno P. Ludwig, of counsel), for The First National Bank of Chicago, as Executor, defendant.

Emanuel Morris, guardian ad litem for Diane E. Dreyfus, a minor, appellant.

Sonnenschein Levinson Carlin Nath & Rosenthal, of Chicago (David Levinson, Edwin A. Rothschild and Joel F. Henning, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Five separate appeals are taken from a summary judgment construing the will of Moise Dreyfus (hereinafter referred to as "testator").

Testator was survived by his widow (Carolyn) and two children (Philip S. Dreyfus and Marie-Louise Rosenthal). In his will testator bequeathed specific sums to various beneficiaries (including $2,500 to each of his grandchildren living at the date of his death) and in addition placed the residue of his estate into two trusts, designated as the "Marie-Louise Trust" and the "Philip Trust." Under the terms of testator's will, his widow was to receive an annual income of $2,500 from each trust during her lifetime and was also entitled to additional amounts of income in the discretion of the trustees. The balance of the income was to be paid over and delivered to Marie-Louise and Philip during their respective lives. The will further provides (paragraph 7) that:

> [I]f my said son Philip S. Dreyfus and my said daughter Marie-Louise Rosenthal, or either of them,

shall die prior to the date of the death of my wife, then such balance, if any, shall, until the date of the death of my said wife, be paid over and delivered to such persons and in such proportions as said Philip . . . and said Marie-Louise . . . may by their respective last wills and testaments validly appoint . . . .

Paragraph 7 also provides that upon agreement of a majority of the trustees they could "pay over to said Philip S. Dreyfus and/or said Marie-Louise Rosenthal, respectively, part or all of the principal of their respective trusts." In accordance with this power, Marie-Louise received that principal attributable to the "Marie-Louise Trust" on June 1, 1938.

Paragraph 8 of the testator's will grants to Carolyn a testamentary power to order distribution of the corpus and accumulated income of the trust by specifically providing that:

I hereby give to my said wife Carolyn S. Dreyfus the right to direct in and by her Last Will and Testament that the principal and accumulated income of said Philip Trust and of said Marie-Louise Trust, or either of them, shall forthwith, upon the death of said Carolyn S. Dreyfus, be distributed to said Philip S. Dreyfus and said Marie-Louise Rosenthal, respectively, or either of them.

Another paragraph of testator's will, paragraph 9, provides in relevant part:

In the event that my said wife shall predecease me or in the event that my said wife shall survive me and shall fail to direct the distribution upon her death of said trusts, or either of them, then my said Trustees shall thereafter hold and dispose of the trust or trusts not so directed to be distributed, in the following manner, to-wit:

85

(a) During each and every year ensuing subsequent thereto and prior to the death of said Philip S. Dreyfus, the income of the Philip Trust shall be distributed quarterly or oftener in the discretion of said Trustees to said Philip S. Dreyfus, together with so much of the principal thereof as in the sole discretion of said Trustees they may deem it advisable or expedient so to distribute. Upon the death of said Philip S. Dreyfus, the principal, or so much thereof as may at such time remain in the hands, custody and control of said Trustees, together with any accumulated income, shall be divided and distributed as said Philip S. Dreyfus may by his Last Will and Testament validly appoint, and in default of appointment, to the lawful issue of said Philip S. Dreyfus surviving at the date of his death, share and share alike, per stirpes and not per capita.

Testator died on March 6, 1937. His son, Philip, married on June 1, 1942, and was divorced on October 25, 1955. Two children were born of that marriage: Phyllis, born August 8, 1943, and Diane, born July 23, 1946.[1] Philip died on January 19, 1961, as the result of an automobile accident. Among the various bequests in his will, Philip gave $1,000 to each of his children if they survived him and also exercised his alleged power of appointment over the Philip Trust in favor of Michael Reese Hospital.[2] Carolyn Dreyfus, testator's widow, died testate on May 26, 1963. In her will was a provision that it was her desire, in accordance with the wishes of Philip Dreyfus, that the Philip Trust be distributed to Michael Reese Hospital; that a question "has been raised whether Philip's will has achieved this purpose"; and

---

[1] A guardian ad litem was appointed for Diane Dreyfus, who was a minor.

[2] Under the authority granted to him under paragraph 7 of testator's will, Philip also appointed to Michael Reese the trust income which would have been paid to him if he was alive.

that, therefore, if she had a valid power of appointment over the trust she exercised it in favor of Marie-Louise Rosenthal with the desire that the latter donate it to Michael Reese Hospital.[3] Carolyn also stated in her will that she has made no provision in her will for Phyllis and Diane Dreyfus because she had made gifts to them during her lifetime.

On October 25, 1963, Marie-Louise Rosenthal filed a complaint in which she requested the court to determine that Carolyn Dreyfus possessed and validly exercised the power of appointment, as aforesaid. The First National Bank of Chicago, as executor under the will of Carolyn Dreyfus, filed an answer in which it was stated that the court should determine Philip's power to have been validly exercised. In the alternative, the answer was in agreement with plaintiff's complaint. The First National Bank of Chicago, as executor under the will of Philip Dreyfus, filed an answer to the complaint and in addition filed a counterclaim in which it requested the court to determine that Philip Dreyfus possessed a power of appointment which he validly exercised in favor of Michael Reese Hospital. The hospital, named as a defendant in plaintiff's action, filed a counterclaim praying that it be adjudged the recipient of the funds in accordance with the provisions of Philip's will. The First National Bank of Chicago, as trustee of the Philip Trust under the testator's will, filed a counterclaim in which it stated that the proper recipient of the trust principal was in doubt, and requested the court to determine the proper recipient thereof. Defendants Phyllis and Diane Dreyfus filed answers to the various complaints and counterclaims and in addition filed a counterclaim in which they asserted that: Philip possessed no power of appointment

---

[3] Counsel for Marie-Louise Rosenthal stated at trial and at oral argument on appeal that she would donate the money in question to Michael Reese Hospital in accordance with her mother's wishes.

because he did not survive Carolyn; Carolyn was not empowered to appoint the Philip Trust to Marie-Louise Rosenthal, and therefore her purported exercise of the power was invalid; that therefore there was a default of appointment and they are entitled to the Philip Trust in accordance with paragraph 9(a) of Moise Dreyfus' will.

Each party (except for The First National Bank as Trustee of the Philip Trust) moved for summary judgment. Phyllis and Diane Dreyfus filed an additional affidavit in support of their motion which was properly stricken by the court. In that affidavit they asserted that Philip and Carolyn had made other gifts to Michael Reese Hospital through living trusts established in 1935 and 1937. None of the gifts referred to in the affidavit came from the testator's estate nor are those trusts involved in this case. The issues in this case concern the interpretation of testator's will construed in light of his intention; therefore, the acts of Carolyn and Philip subsequent to the execution of testator's will can have no bearing on testator's intention.

The court granted the motion of Marie-Louise and found in relevant part that Philip Dreyfus did not have a power of appointment since he predeceased Carolyn; and that Carolyn had a power of appointment which she validly exercised in favor of Marie-Louise Rosenthal. Among others, Phyllis and Diane Dreyfus, Michael Reese Hospital, and The First National Bank of Chicago as executor of the will of Philip Dreyfus, appeal from the granting of that judgment and from the denial of their respective motions.

Appellants, Phyllis and Diane Dreyfus, contend that the existence of Philip's power of appointment was dependent upon his surviving Carolyn, and therefore his appointment to Michael Reese was invalid; that Carolyn had the testamentary power only to direct the acceleration and distribution of either or both of the trusts and

did not have the power to cross-appoint the principal of the Philip Trust to Marie-Louise Rosenthal; that therefore her purported appointment was invalid; that therefore there was a default in appointment and appellants are entitled to the estate in accordance with paragraph 9(a) of testator's will as aforequoted.

Appellant, Michael Reese Hospital, contends that Carolyn had the primary power of appointment over the property but that she exercised it conditionally, and thus the purported exercise was of no effect; that Philip possessed a testamentary power which was not dependent upon his surviving Carolyn, but rather it was dependent upon Carolyn's failure to exercise her power; and that upon Carolyn's default of appointment, the disposition of the trust estate under Philip's will became operative to effect a bequest of the property to Michael Reese Hospital.

Appellee, Marie-Louise Rosenthal, contends that under paragraph 8 of testator's will it was testator's intention that Carolyn possess the power to appoint to her the principal and accumulated income attributable to the Philip Trust. In support of her contention she relies primarily upon the words "or either of them" in paragraph 8 as aforequoted.

We shall first determine whether it was the intention of the testator, Moise Dreyfus, that Carolyn have the testamentary power to cross-appoint the Philip Trust to Marie-Louise Rosenthal. To determine the testator's intention his entire will must be examined. Testator, in paragraph 6, established two entirely separate and distinct trusts; one called the "Philip Trust" and the other the "Marie-Louise Trust." In paragraph 7 of his will testator provided that if either Philip or Marie-Louise should predecease Carolyn, the respective decedent's share of the income during the life of Carolyn shall be paid over and delivered to his or her appointee. The will

further provides, in paragraph 9(a), that upon the happening of certain conditions the principal and accumulated income of the Philip Trust would descend to the living issue of Philip Dreyfus after the latter's death; and in a separate paragraph, 9(b), the testator provided that the principal and accumulated income of the Marie-Louise Trust would, after the death of Marie-Louise and upon the happening of certain conditions, descend to her living issue. Thus, throughout testator's will the two trusts remained separate and distinct. Moreover, in paragraph 8 testator granted to Carolyn the testamentary power only to "direct" that the trust "be distributed." Nowhere did he grant to Carolyn the power to "appoint," although he specifically used the word "appoint" when referring to powers of appointment in paragraphs 7, 9(a) and 9(b), respectively.

Absent evidence to the contrary, it is presumed that the testator intended to treat his children alike. In re Laughlin's Estate, 354 Pa 43, 46 A2d 477. Under the appellee's construction of paragraph 8, Carolyn was empowered at her death to appoint the Philip Trust to her (Marie-Louise) and thereby deprive Philip of any further interest in the trust even though Philip might survive Carolyn. (In accordance with paragraph 7 of testator's will, in 1938 the Marie-Louise Trust had been terminated and she received the proceeds thereof.) There is no evidence in the record that Moise Dreyfus favored either of his children over the other; nor is there evidence that testator intended that one of his children should, at the whim of his wife upon her death, be deprived of his or her interest in the trust. Testator, in using the words "or either of them" in paragraph 8, intended merely to establish that upon her death Carolyn need not act with regard to both trusts, but could direct distribution of one trust and not the other. In paragraph 9 testator used the words "or either of them" clearly in anticipation that Carolyn might wish to direct distribu-

tion of one trust and not the other. These same words were used by the testator in paragraph 7 when he referred to "Philip S. Dreyfus and my said daughter Marie-Louise Rosenthal, or either of them." Additionally, the use of the word "respectively" in paragraph 8 adds nothing in support of appellee's argument, and is a word used for grammatical accuracy when referring to more than one person or object.

■ Therefore, after a thorough examination of the will of Moise Dreyfus, we find that Carolyn Dreyfus was granted the testamentary power only to direct distribution of the Marie-Louise Trust to Marie-Louise Rosenthal and to direct distribution of the Philip Trust to Philip Dreyfus, and not to cross-appoint the Philip Trust to Marie-Louise Rosenthal.

It having been established that Carolyn did not have the power to cross-appoint the Philip Trust to Marie-Louise Rosenthal, Phyllis and Diane Dreyfus now contend that the existence of Philip's power of appointment was contingent upon his surviving Carolyn; that since Philip predeceased Carolyn there has been a default in appointment; and that therefore they are entitled to the trust estate in accordance with paragraph 9(a) of the testator's will which provides that in default of appointment by Philip, his issue (these appellants) would inherit. Paradoxically, they argue that the existence of Philip's power, which is granted to him in paragraph 9(a), is subject to certain alleged conditions precedent as set forth in the preamble to that subsection; but that their gift in default of appointment, also set forth in 9(a) immediately subsequent to the grant of Philip's power, is not subject to those identical alleged conditions precedent.

Paragraph 9(a) sets forth the testator's desired disposition of the trust estate and is preceded by the following language:

> In the event that my said wife shall predecease me or in the event that my said wife shall survive me and shall fail to direct the distribution upon her death of said trusts, or either of them, then my said Trustees shall thereafter hold and dispose of the trust or trusts not so directed to be distributed, in the following manner, to wit:

In that portion of paragraph 9(a) which also preceded the gift to the Dreyfus appellants, the testator provided for the continuation of the trust after Carolyn's death if Philip was still alive:

> During each and every year ensuing subsequent thereto [referring to Carolyn surviving the testator and failing to direct distribution] and prior to the death of said Philip S. Dreyfus, the income of the Philip Trust shall be distributed . . . to said Philip S. Dreyfus, together with so much of the principal thereof as in the sole discretion of said Trustees they may deem it advisable or expedient so to distribute.

The testator next provided for the disposition of the trust estate upon the ultimate termination of the trust at the death of the life tenants:

> Upon the death of said Philip S. Dreyfus, the principal, or so much thereof as may at such time remain in the hands, custody and control of said Trustees . . . shall be divided and distributed as said Philip S. Dreyfus may by his Last Will and Testament validly appoint. . . .

After providing that Philip was to have a testamentary power of appointment over the trust estate, the testator then provided for a gift of the trust estate to the Dreyfus appellants only in default of that appointment. The specific language, immediately subsequent to the grant of Philip's power of appointment, is as follows:

[A]nd in default of appointment, to the lawful issue of said Philip S. Dreyfus surviving at the date of his death, share and share alike, per stirpes and not per capita.

We cannot construe paragraphs 9 and 9(a) to support the position of the Dreyfus appellants. In fact, under the provisions of this will the Dreyfus appellants are not entitled to the trust estate even if, for purposes of argument, we accept their contention that Philip had no power of appointment because he predeceased Carolyn. Under the specific language of paragraph 9(a) Phyllis and Diane Dreyfus were to receive the trust estate only "in default of [Philip's] appointment." The term "in default of appointment" presupposes that there was a valid power of appointment which either was not exercised at all or which was exercised in a defective manner so as to render that purported exercise void. Therefore, under appellants' own argument that Philip had no valid testamentary power of appointment because he predeceased Carolyn, there could be no default of appointment. There being no "default of appointment," appellants' interest only in default of appointment could never come into being.

In the interpretation of wills, the intention of the testator must control. The whole will and all its parts must be considered in order to ascertain that intention. The intent which controls is that which is manifest, either expressly or by necessary implication, from the language of the will. Martin v. Casner, 383 Ill 260, 48 NE2d 944. A thorough examination of the testator's will reveals that it was his intention that Carolyn have a life estate in the Philip Trust if she desired; that upon the ultimate termination of the trust the remaining trust estate was to be disposed of in accordance with Philip's

93

desires; [4] and that the gift to the children of Philip was to take effect only to avoid intestacy under the testator's plan for distribution of the trust property.[5] That the testator intended his son, Philip, to have the power to dispose of the trust estate upon the ultimate termination of the trust is supported by the express language of the testator's will. Paragraphs 9 and 9(a) of the will provide that if Carolyn should survive the testator but "shall fail to direct the distribution upon her death" of the Philip Trust, then that trust property remaining in the possession of the trustees shall ultimately, upon Philip's death, "be divided and distributed as said Philip S. Dreyfus may by his Last Will and Testament validly appoint. . . . " [6] Carolyn failed to direct distribution of the

---

[4] Paragraph 10 of the testator's will cannot be considered as indicating an intention of the testator to place a restriction on the existence of Philip's power. Paragraph 10, which provides that the beneficiaries shall not have any vested interest in the trust estate or the income thereof until the same is actually paid over and transferred to them, and which also provides that they shall have no "power in any manner to assign, transfer, charge or antici-pate the same, or any part thereof, or interest therein, until the same is actually paid over and transferred to them," is merely a spendthrift clause. We do not believe that this spendthrift clause evidences any intention of the testator, one way or another, as to whether Philip shall have a power to appoint the trust estate at his death and prior to the death of Carolyn. The purpose of this spendthrift clause is solely to protect a living beneficiary by preventing him from transferring his interest in property prior to the time of distribution to him. It has no independent disposi-tive effect upon the terms of the testator's will. Northern Trust Co. v. North, 73 Ill App2d 469, 220 NE2d 28.

[5] The Dreyfus appellants do not contend that they would be en-titled to the trust estate if it passed as intestate property. That they would have no interest whatsoever if the property passed in-testate was admitted by their counsel at oral argument. Under the intestacy laws, the property would descend to the heirs at law of the testator who were alive at the testator's death. Those heirs would include only the testator's widow and children.

[6] That portion of the will provides that if Philip survives Caro-lyn, and Carolyn fails to direct distribution of the Philip Trust,

Philip Trust upon her death to Philip Dreyfus and, in fact, could not have done so because Philip predeceased her. The will of Moise Dreyfus was intricately drawn and, if he had intended that the validity of Philip's power be conditioned upon his surviving Carolyn, we can only assume that the condition would have been inserted into paragraph 9. Certainly the testator was aware that Philip might predecease Carolyn, having provided in paragraph 7 of his will for the disposition of Philip's share of the trust income if that possibility—however slight— became a reality.

That the testator intended Philip to have such a power is further evidenced by various provisions of his will by which the entire trust estate could vest in Philip during his (Philip's) lifetime, including the power to dispose of it as he chose: first, the power in the trustees in paragraph 7 to "pay over" the trust to Philip during Carolyn's lifetime; second, if Philip survived Carolyn and the latter exercised her testamentary power to order that the Philip Trust be distributed to him; and, third, if Philip survived Carolyn and the latter did not exercise her testamentary power as aforesaid, the trust estate was distributable to Philip in the discretion of the trustees and Philip was granted the testamentary power to appoint the trust estate.

In light of those provisions of testator's will it is a reasonable and persuasive construction of the will that if Philip predeceased Carolyn, this event—beyond anyone's

---

then the trust estate shall be held by the same trustees for the benefit of Philip; and that in their discretion the trust corpus could be distributed to Philip. Since Philip predeceased Carolyn, there could be no distribution to him and therefore the next sentence of the will immediately came into effect: "Upon the death of said Philip S. Dreyfus, the principal, or so much thereof as may at such time remain in the hands, custody and control of said Trustees, together with any accumulated income, shall be divided and distributed as said Philip S. Dreyfus may by his Last Will and Testament validly appoint . . . ."

control—would not be permitted to defeat the general plan of the will, and Philip, nevertheless, would be empowered to appoint the assets of the trust. Any appointment executed by Philip would, of course, be subject to the life estate in Carolyn.

In 5 Bowe-Parker: Page on Wills, § 44.2, it is stated on pages 398–399 that:

> It is sometimes said that a condition will not be implied, which means that a gift will not be held to be conditional unless such intent affirmatively appears, either from the language of the gift, or from the will as a whole, when read in the light of the surrounding circumstances.

In the instant case, not only is there absent an affirmative showing that the testator desired Philip's power of appointment to be conditioned upon his surviving Carolyn, but a conclusion that such a showing was made would appear to be illogical under the terms of the testator's will. It is undisputed that the testator intended Philip to have a power of appointment over the trust estate if he survived Carolyn and the latter failed to direct distribution of the trust estate to him. We find no logic, nor is any advanced in this case, why the testator did not also intend for Philip to have a power of appointment over the trust estate even if he predeceased Carolyn, but any appointment executed thereunder to be subject to Carolyn's life estate. Nor are we apprised of any rule of law requiring that the validity of a life tenant's power of appointment, or the validity of any appointment executed thereunder, be dependent upon the property in question having inured to his benefit at the time of the exercise of the power (where the life tenant has survived the testator). In fact, a case to the contrary is Lindsley v. First Christian Soc. in Camptown, 37 NJ Eq 277 (1883). In that case the testator bequeathed property to his wife for life, then to his daughter, Mary, for life. Mary was

granted a general testamentary power of appointment over the property and, in default of appointment, the property would pass as specifically provided therefor in the testator's will. Mary predeceased her mother and in her will exercised the power of appointment. The issue before the court was whether Mary had a valid power of appointment since she predeceased her mother. At page 281 the court stated:

> There is nothing in the testator's will to indicate an intention to engraft a limitation upon the power that it shall be contingent upon the survival of Mary. The gift over is made only in the event that she fails to exercise the power in her lifetime, and not upon the contingency that she shall survive her mother. The testator's intention clearly was that his daughter should have the absolute power of disposition of his estate subject only to the provision for his wife; that she should at least so far enjoy it as to be permitted to make a testamentary disposition of it.

We find that it was the intention of Moise Dreyfus that Carolyn was empowered upon her death to direct distribution of the Philip Trust only to Philip, and not to cross-appoint the Philip to Marie-Louise Rosenthal; and that if Philip predeceased Carolyn he was to have a power of appointment over the trust estate with any appointment executed thereunder subject to Carolyn's life estate. Since Philip validly exercised that power of appointment in favor of Michael Reese Hospital, upon the death of Carolyn the trust estate should have been paid over and distributed to Michael Reese Hospital in accordance with Philip's will.

That portion of the decree denying the motions for summary judgments of Phyllis and Diane Dreyfus, and of the Guardian ad Litem, is affirmed. That portion of the decree denying the motions for summary judgment of Michael Reese Hospital, The First National Bank of

97

Chicago, as executor of the will of Philip Dreyfus, and of The First National Bank of Chicago, as executor of the will of Carolyn Dreyfus, is reversed.[7] That portion of the decree granting the motion for summary judgment of Marie-Louise Rosenthal is reversed. The cause is remanded with directions to: (1) deny the motion for summary judgment of Marie-Louise Rosenthal; (2) enter summary judgment in favor of Michael Reese Hospital in accordance with the prayer in its counterclaim that it be adjudged the recipient of the funds in accordance with the provisions of Philip Dreyfus' will; (3) enter summary judgment in favor of The First National Bank of Chicago, as executor of the will of Philip Dreyfus, in accordance with the prayer in its counterclaim that the court direct distribution of the Philip Trust to Michael Reese Hospital; (4) enter summary judgment in favor of The First National Bank, as executor of the will of Carolyn Dreyfus, in accordance with the primary theory in its answer, i. e., that the trust estate should be distributed in accordance with the will of Philip Dreyfus; (5) order The First National Bank, as Trustee of the Philip Trust, to distribute the assets in the Philip Trust (known as Trust No. 33705) to Michael Reese Hospital and Medical Center; and (6) allow such additional fees as are just and reasonable.

Affirmed in part; reversed in part with directions.

ENGLISH, P. J., concurs.

McCORMICK, J., dissents.
I must respectfully dissent to a part of the majority opinion. We agree that the only trust involved is the

[7] In denying the motion for summary judgment of the executor of Carolyn's will, the court apparently considered only that portion of the executor's answer to the effect that Philip possessed a power which was validly exercised.

98

Philip Trust, as the res of the Marie-Louise Trust was transferred to her prior to the death of either Carolyn or Philip, under the provisions of paragraph 7 of the will of Moise Dreyfus; consequently, in this dissent I will refer only to the Philip Trust.

In considering the dispositive scheme of the testator the entire will must be read as a whole. In Weber v. Hawkins, 30 Ill2d 278, 196 NE2d 695, the court said, at page 283:

> "In construing a will the court's primary mandate is to give effect to the testator's intention, but, as the multitude of cases involving will construction indicate, frequently this is a difficult task. The intention of the testator is to be ascertained from the provisions of his will; the intention sought is not that which by inference may be presumed to have existed in the mind of the testator, but that which, by words used in the will, he has expressed."

"The intention of the testator has been called the polar star in construing wills, but that intention must appear from the will itself, in connection with the testator's property, objects of his bounty and circumstances, . . ." Miller v. Brinton, 294 Ill 177, 128 NE 370. It is apparent that the only issue this court must determine is whether Philip in his will could make a valid appointment of the principal of the Philip Trust if he predeceased Carolyn, and to whom the trust res should pass in case there was no such valid appointment.

I agree with the majority opinion that Carolyn Dreyfus was granted the testamentary power only to direct distribution of the Marie-Louise Trust to Marie-Louise Rosenthal and to direct distribution of the Philip Trust to Philip Dreyfus, and not to cross-appoint the Philip Trust to Marie-Louise Rosenthal.

In the majority opinion it is stated that Phyllis and Diane Dreyfus contend that

99

". . . the existence of Philip's power of appointment was contingent upon his surviving Carolyn; that since Philip predeceased Carolyn there has been a default in appointment; and that therefore they are entitled to the trust estate in accordance with paragraph 9(a) of the testator's will which provides that in default of appointment by Philip, his issue (these appellants) would inherit. Paradoxically, they argue that the existence of Philip's power, which is granted to him in paragraph 9(a), is subject to certain alleged conditions precedent as set forth in the preamble to that sub-section; but that their gift in default of appointment, also set forth in 9(a) immediately subsequent to the grant of Philip's power, is not subject to those identical alleged conditions precedent."

It would seem to be undisputed that the trust res must necessarily be distributed to whomever is entitled to it at the time of the death of the last survivor (the last survivor could be either Carolyn or Philip). Paragraph 9(a) provides that "In the event that my said wife shall predecease me or in the event that my said wife shall survive me and shall fail to direct the distribution upon her death of said trusts, or either of them, then my said Trustees shall thereafter hold and dispose of the trust or trusts not so directed to be distributed, in the following manner, to wit:" Under the circumstances in the case before us Carolyn, the wife of the testator, did survive him and also survived Philip.

It is true, as stated in the majority opinion, that under paragraph 9(a) the testator provided for the continuation of the trust after Carolyn's death if Philip was still alive. We quote from the majority opinion as follows:

" 'During each and every year ensuing subsequent thereto [referring to Carolyn surviving the testator

100

and failing to direct distribution] and prior to the death of said Philip S. Dreyfus, the income of the Philip Trust shall be distributed . . . to said Philip S. Dreyfus, together with so much of the principal thereof as in the sole discretion of said Trustees they may deem it advisable or expedient so to distribute.'

"The testator next provided for the disposition of the trust estate upon the ultimate termination of the trust at the death of the life tenants:

" 'Upon the death of said Philip S. Dreyfus, the principal, or so much thereof as may at such time remain in the hands, custody and control of said Trustees . . . shall be divided and distributed as said Philip S. Dreyfus may by his Last Will and Testament validly appoint.'

"After providing that Philip was to have a testamentary power of appointment over the trust estate, the testator then provided for a gift of the trust estate to the Dreyfus appellants only in default of that appointment. The specific language, immediately subsequent to the grant of Philip's power of appointment, is as follows:

" '[A]nd in default of appointment, to the lawful issue of said Philip S. Dreyfus surviving at the date of his death, share and share alike, per stirpes and not per capita.' "

The majority opinion further says: "The term 'in default of appointment' presupposes that there was a valid power of appointment which either was not exercised at all or which was exercised in a defective manner so as to render that purported exercise void. Therefore, under appellants' own argument that Philip had no valid testamentary power of appointment because he predeceased Carolyn, there could be no default of appointment." In support of that contention of the meaning of "default" the majority opinion cites no cases. However, in In re Ball's

101

Trust, 43 Misc2d 84, 249 NYS2d 924, the settlor of the trust made a trust agreement providing for the payment of a net income for life to his niece, Julia, and that upon her death

> " 'the Trustee shall distribute the principal of the said Trust, together with any accrued income thereon, to such person, persons or corporations, other than and excluding the estate of the said Julia M. Ball, her creditors and the creditors of her estate, as the said Julia M. Ball will appoint in her last Will and Testament; and in default of such appointment,' distribution was to be made to the persons who would be settlor's distributees under the law of the state of New York had he died immediately after Julia."

Julia, who died in 1963, declared in her will that it was her intention to exercise the power of appointment of the principal of the said inter vivos trust and of the said testamentary trust and that she was exercising the same under the provisions of the residuary clause of her will. In that paragraph she stipulated: "all the rest, residue and remainder of my estate . . . and including specifically the said trust fund[s]," over which she had power of appointment to The First Pennsylvania Banking and Trust Company [her executor] "as trustee for the following purposes: . . ." The purposes enumerated were to pay numerous general legacies to named charities and individuals, and to divide the "balance" of the residuary estate into three shares in trust for a niece and two nephews for life with power of appointment.

The court held that this attempted exercise of the power of appointment by Julia was invalid and the distribution should be made as the trust alternatively provided. The court said:

> "Any appointment attempting to exercise the power beyond its express limitations and which would be

violative of donor's intent must be held to be an unauthorized and invalid appointment and, as such, *would constitute in effect a 'default of such appointment.'* Analogously, it was said in Lowe v. Bankers Trust Co., 270 NY 143, 148, 200 NE 674: 'An illegal appointment is no appointment.'" [Emphasis supplied.]

Under the provisions of paragraphs 9 and 9(a) of the Moise Dreyfus will, there was a default of appointment. Under paragraph 9, Philip's right to appoint would come into effect only if he had survived Carolyn. The first part of paragraph 9 provides:

". . . in the event that my said wife shall survive me and shall fail to direct the distribution upon her death of said trusts, or either of them, then my said Trustees shall thereafter hold and dispose of the trust or trusts not so directed to be distributed, in the following manner, to wit:"

It would seem that the only way paragraph 9(a) could be read is that it refers to what would occur after the death of Carolyn. The preceding clause above quoted deals with that question. Paragraph 9(a) commences: "During each and every year ensuing subsequent thereto and prior to the death of said Philip S. Dreyfus, . . ." If any meaning is to be given at all to the word "subsequent" it must mean after the death of Carolyn.

Paragraph 9(a) further provides that upon the death of Philip the principal shall be divided and distributed as Philip may by his last will and testament validly appoint. Again, the appointment referred to is one which must occur subsequent to the death of Carolyn. It then further provides that in default of appointment the res of the trust shall descend to the lawful issue of Philip surviving at the date of his death, share and share alike per stirpes, and not per capita.

103

The definition of "default" as used in the majority opinion is not in accord with the holding of the court in In re Ball's Trust, 43 Misc2d 84, 249 NYS2d 924, supra. As correctly pointed out in the majority opinion, "Carolyn failed to direct distribution of the Philip Trust upon her death to Philip Dreyfus and, in fact, could not have done so because Philip predeceased her."

Reading the will as a whole, it is apparent that the testator did not intend to permit an appointment by Philip if he predeceased Carolyn. It is fallacious to say that Philip possessed a testamentary power which was not dependent upon his surviving Carolyn, but rather it was dependent upon Carolyn's failure to exercise her power. Such a conclusion places a severe strain upon logical reasoning.

In the second part of paragraph 9(a) the testator considers the final distribution of the trust res. He gives to Philip a general power to appoint, subsequent to the death of Carolyn, but then provides that upon Philip's failure to appoint, the corpus shall go to the then living issue of Philip. In 36 ILP Wills, § 443, it is provided that a testamentary power may be exercised only by the person or persons on whom it is conferred, and must be exercised in the manner prescribed by the donor; that where a testamentary power of appointment is not exercised by the donee thereof the property subject to the power passes to such persons as are designated to take in case of default in the power.

In Stern v. Stern, 410 Ill 377, 102 NE2d 104, the court said:

"While it is the duty of courts to construe wills as they find them, and not to draft new wills (Illinois Land and Loan Co. v. Bonner, 75 Ill 315; Bond v. Moore, 236 Ill 576,) or conjecture what provisions the testator would have made had he thought of the particular contingency, (First Trust and Savings

104

Bank v. Olson, 353 Ill 206,) courts have nevertheless evolved the doctrine of devise or gift by implication, whereby a gift will be sustained though not made by the will in formal language, when the probability of the intention of the testator to make the gift is so strong that a contrary intention cannot be supposed. Martin v. Martin, 273 Ill 595; Connor v. Gardner, 230 Ill 258; King v. King, 168 Ill 273; Bond v. Moore, 236 Ill 576; City Bank Farmers Trust Co. v. Hentz, 107 NJ Eq 283, 152 A 331; Cary & Schuyler, Future Interests 331, 57 Am Jur 739."

Under this rule it is improper for either the trial court or a reviewing court to draft a new will for the testator. In effect, that is exactly what the majority opinion does in this case.

The interpretation that Philip had no right to appoint the res of the trust until after the death of Carolyn is strengthened by paragraph 10 of the Moise Dreyfus will, which provides that the beneficiaries shall not have any vested interest in the trust estate or the income thereof until the same is actually paid over and transferred to them, "nor shall they have any power in any manner to assign, transfer, charge or anticipate the same, or any part thereof, or interest therein, until the same is actually paid over and transferred to them, . . ."

In other words, the testator intended by paragraph 9 to provide that Philip should have no power of appointment unless Carolyn had predeceased him. A power to appoint does not of itself vest the donee with any title or interest in the thing to be disposed of under the power, but merely vests in him power to appoint the one to take title. A power of appointment is neither an absolute right of property nor an estate.

1 Page on Wills, § 1.2 states:

"The essential idea underlying the concept of the will is that though it is made by a person during his

lifetime it does not become binding and has no legal force or operative effect until his death; nor does it pass any interest in property or create rights in others until the death of the maker, at which time its dispositive effect operates upon the circumstances concerning the extent and the nature of the testator's property and the objects of his bounty existing at his death rather than at the time the will was executed. . . ."

A will made by a testator while he lives is without force or value, but it begins to speak when he ceases to do so, and is thereafter heard in his stead. Thompson v. J. D. Thompson Carnation Co., 279 Ill 54, 61, 116 NE 648; Levings v. Wood, 339 Ill 11, 13, 170 NE 767; Allen v. National Bank of Austin, 19 Ill App2d 149, 153 NE2d 260.

Philip's will spoke at the time of his death, and under the provisions of paragraph 9 of the Moise Dreyfus will he had no valid power to appoint, because Carolyn was living at that time. Hence, the will of Philip could vest no interest in the trust corpus in Michael Reese Hospital until the date of Philip's death, and then only if Carolyn had predeceased him. Additionally, Carolyn, who had the power to direct the Philip Trust only to Philip, ceased to have any power over the Philip Trust upon the death of Philip. Under Moise's will the issue of Philip living at the date of his death had a vested interest in the corpus, defeasible by the exercise of the power of appointment either by Carolyn or by Philip. However, the exercise of the power presupposes that it be a valid one. Since neither party did so, the remainder of the trust res vested indefeasibly in the then living Dreyfus children.

The will speaks at the time of the testator's death. It is apparent that it was the intention of the testator that if Philip predeceased Carolyn he could not make a

valid appointment, and in default of such appointment, the trust res should be taken by the lawful issue of Philip surviving at the date of his death. Philip having predeceased Carolyn, the appointment by his will of the Philip Trust estate to Michael Reese Hospital was an invalid appointment.

The decree of the Circuit Court should be reversed and the case remanded to the trial court with directions to enter a summary judgment in favor of Phyllis and Diane Dreyfus, distributing the res of the trust estate to them share and share alike per stirpes and not per capita, as was provided in the will.