In re ESTATE OF MARY B. HAYDEN, Deceased—(EDMUND HAYDEN, JR., Petitioner-Appellee, v. FRANCIS J. BURNS, Ex'r of the Estate of Mary B. Hayden, Deceased, Executor-Appellant).

(No. 74-154; ▮▮▮▮▮▮▮)

Third District—October 29, 1974.

James T. Bradley, of Thomas, Wallace, Feehan & Baron, Ltd., of Joliet, for appellant.

F. Donald Delaney, of Joliet, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Will County construing a will of Mary B. Hayden which identified as the intended beneficiary Edmund Hayden, Jr. After the death of the testatrix, Mary B. Hayden, petitioner Edmund Hayden, Jr., filed a petition to construe her will. One paragraph of her will gave 40 acres of her farm to "Edmund Hayden." The executor construed this provision to mean Edmund Hayden, Sr., who at this time was deceased, and the executor accordingly considered that the gift had lapsed. The petitioner Edmund Hayden, Jr., sought a construction of the provision to mean petitioner as beneficiary, rather than his deceased father. The trial judge heard the evidence and found that testatrix had meant that the petitioner was to receive the 40 acres in the devise. The trial court denied a post-trial motion by the executor.

It appears from the record that the testatrix Mary B. Hayden was a sister-in-law of Edmund Hayden, Sr. In 1941, the United States Government bought the respective farms of Edmund, Sr., and Mary near Joliet. Edmund Hayden, Sr., then purchased a farm near Woodstock, Illinois, in McHenry County, and a few months later he financially assisted Mary B. Hayden in purchasing an adjacent farm. Edmund, Sr., actually operated and managed Mary's farm until his death in 1963. Thereafter, his son Edmund, Jr., or "Bud" as he was known, operated and managed the farm for Mary B. Hayden.

The will under consideration was executed in September of 1956. It was shown that the testatrix sought the advice of Edmund, Sr., at that time in preparation of her will, and that Edmund, Sr., had arranged a meeting with Melville Gray, a Joliet attorney. Testimony on behalf of petitioner of his mother, his aunt, and his sister told about a breakfast discussion in 1953, a Thanksgiving dinner in 1955, and a trip to the

Ozarks in 1955. On each of these occasions something had been said about which part of Mary's land petitioner "Bud" liked best. "Bud" indicated his preference for the wooded area of the farm in spite of its poor situation for farming as it would be a good place upon which to build a house. The 40-acre tract was in a wooded area and was not contiguous to the Edmund Hayden farm. At no time, however, was it shown that Mary Hayden said to anyone that she intended to give or thought about giving any property to "Bud" Hayden (Edmund Hayden, Jr.) in her will or otherwise.

It was shown that in 1951, Edmund, Sr., had a cancer operation which was successful and at the time of the execution of the will in 1956, there was apparently no reason to doubt his continued vitality, although he did tell Mary that he didn't want to be executor because he might not be around that long. Edmund, Sr., continued to farm his own land and Mary B. Hayden's land and to handle the financial affairs for both until his death. Edmund, Sr., died in 1963 of leukemia which was unrelated to the operation 12 years previously. From his death on, "Bud" Hayden took over these chores. Bud was born in 1935 and was, therefore, 20 or 21 years of age at the time of the execution of the will and about 27 or 28 at the time of his father's death. It is notable that in the will the 40 acres was given to "Edmund Hayden" without distinguishing between the two Edmund Haydens, father and son.

The estate introduced evidence of a deposition of Melville Gray. Mr. Gray died shortly before trial but his testimony had been perpetuated by the deposition. Mr. Gray testified with respect to the execution of the will in 1956. He recalled, after he had looked over his notes but without consulting with an attorney for the estate, that the "Edmund Hayden" in the will was identified by Mary B. Hayden, at the time of execution, as the man who was then the owner of the farm adjacent to hers and was then operating her farm in 1956. The testimony of all witnesses was clear as to the point that in 1956 the owner of the adjacent farm and the operator of Mary's farm was Edmund Hayden, Sr. Attorney Gray also testified that Mary did not mention Edmund Hayden, Jr., or "Bud" Hayden, at any time. There was testimony that when Mary wanted to distinguish between the two Edmunds she referred to the petitioner Edmund Hayden, Jr., as "Bud."

██ On appeal in this court, the executor contends that the trial court's findings were not supported by the evidence and that, therefore, the court erred in denying the estate's post-trial motion. Construction of wills follows basic rules and principles which are fairly well defined in this State. The pole star or guiding light which is fundamental is that in construing wills the court seeks to determine the testamentary intent.

The court is required to ascertain and give effect to such intent of the testator (*Bradshaw v. Lewis*, 54 Ill.2d 304, 296 N.E.2d 747). The issue on appeal in such cases is whether the trial court's construction truly accomplished such objective (*Continental Illinois National & Trust Co. v. Kane*, 308 Ill.App. 110, 31 N.E.2d 351). It is also apparent that normally a will is considered to be an integrated written document and the courts do not look outside the "four corners" of the will in interpreting its meaning. In cases of ambiguity, however, such as the issue before us as to the identification of beneficiaries, the courts will accept parol or extrinsic evidence as an aid in construction of the will's terms to truly determine the testator's intent at the time of execution. Therefore, the testimony of circumstances surrounding the testatrix at the time of the execution of the will is generally admissible (*O'Connell v. Gaffney*, 23 Ill.2d 611, 179 N.E.2d 647). It is the circumstances at the time of execution which are vital in construing the intent of the testatrix and not acts of beneficiaries after the execution of the will unless such acts are shown to have a specific bearing on the testamentary intent at the time of execution (*Rosenthal v. First National Bank*, 88 Ill.App.2d 82, 232 N.E.2d 265, *aff'd*, 40 Ill.2d 266, 239 N.E.2d 826, *appeal after remand*, 127 Ill. App.2d 371, 262 N.E.2d 262).

It is notable, however, that, as stated in *Weir v. Leafgreen*, 26 Ill.2d 406, 411, 186 N.E.2d 293, the court is not justified, under the guise of construing a will, in creating a wholly new gift where the testator has made no provision whatever for a contingency which has occurred or where it appears that, in view of subsequent events, a particular provision would probably have been made if the testator had thought of their occurrence. The court indicated there that extrinsic evidence is usually limited to the circumstances in existence at the time of the execution of the will and subsequent events can be considered only if indicative of testamentary intent.

On the basis of the record, it appears that petitioner Edmund Hayden, Jr., failed to overcome the most relevant evidence introduced, the deposition of Melville Gray who prepared the will and testified that the testatrix identified the Edmund Hayden therein referred to as Edmund Hayden, Sr. The discussions over meals in 1953 and 1955 and on the trip in 1955, might indicate a possible desire of the testatrix to give "Bud" Hayden a portion of her farm. Such discussions, however, attained only the level of mere discussions and no witness testified at any time that Mary specifically said she would give "Bud" any land. In 1968, while she was discussing "Bud's" management of her farm, she did say he would be "well compensated." This was 12 years after the will's execution and nothing more specific was said. We note also that in appellant's

brief mention was made that "Bud" was paid for the work he did for Mary but we find nothing in the record to bear out this point and are attaching no significance to this phase of the argument. It is notable also that although Edmund Hayden, Sr., died in 1963, Mary had made no attempt to change her will the remaining 9 years of her life. We also note that in the years prior to the death of Edmund Hayden, Sr., from 1941 until 1963, he managed Mary Hayden's farm and handled her financial affairs without compensation. She also told Edmund, Sr., that she wanted to give him some land although at that time he said he didn't need it. All of this tends to confirm the testimony of Attorney Gray who identified the "Edmund Hayden" who was to get the 40 acres as Edmund Hayden, Sr.

■■ On the basis of the evidence in the cause before us, therefore, it appears with reasonable clarity that Edmund Hayden, Sr., was the intended beneficiary at the time of the execution of the will. We find insufficient support in the record for the conclusion of the trial that the testatrix had meant by the "Edmund Hayden" referred to in the will, Edmund Hayden, Jr.

The order of the Circuit Court of Will County finding and designating Edmund Hayden, Jr., as the beneficiary intended in the provisions of the will conveying 40 acres of farm land to "Edmund Hayden" is reversed and the court is directed to enter a finding herein that the "Edmund Hayden" referred to in such will was Edmund Hayden, Sr.

Reversed and remanded.

STOUDER and DIXON, JJ., concur.